EL PUEBLO, APELADO, *v.* FRANCIS, APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 2ª.

No. 527.—Resuelto en junio 10, 1913.

HOMICIDIO INVOLUNTARIO PERPETRADO POR MEDIO DE UN AUTOMÓVIL.—En el presente caso se demostró que el acusado salió de un garage guiando un automóvil que acababa de ser reparado, con objeto de probar la máquina; que esto no obstante marchó a gran velocidad por dentro del recinto urbano de la ciudad de San Juan, y que a pesar de tener ocasión de ver a un ser humano que cruzaba la calle como a unos quince metros de distancia, continuó a gran velocidad, sin tocar la bocina ni usar el freno de emergencia, y lo arrolló y mató y siguió aún marchando. Se resolvió: que tal hecho era constitutivo del delito de homicidio involuntario imputado al acusado.

ID.—NEGLIGENCIA DEL CHAUFFEUR—NEGLIGENCIA CONTRIBUTIVA DE LA VÍCTIMA.—En casos de esta naturaleza, el Fiscal no está obligado a probar que la víctima no contribuyó con su propia negligencia a la realización del daño, bastándole sólo demostrar que el acusado fué imprudente o negligente, ya que la intención de la ley es castigar la imprudencia o negligencia del acusado. La regla predominante es que no existe analogía entre un caso civil sobre indemnización a la parte perjudicada y uno criminal cuyo objeto es castigar el delito.

ID.—NEGLIGENCIA DE LA VÍCTIMA—DEFENSA DEL ACUSADO.—La negligencia de la víctima puede ser alegada por el acusado como defensa y ser apreciada para graduar la responsabilidad del mismo, pero para que tal negligencia constituya una excusa completa y pueda eximir totalmente de responsabilidad al acusado, tiene que ser de tal naturaleza que lleve al ánimo del juzgador el convencimiento de que más que negligencia contribuyente fué la única negligencia productora del daño.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. E. B. Wilcox.*

Abogado del Pueblo: *Sr. Frank Martínez, Fiscal interino.*

EL JUEZ ASOCIADO DEL TORO emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto contra la resolución de la Corte de Distrito de San Juan, Sección 2ª., de mayo 21, de 1912, negando la concesión de un nuevo juicio en la causa seguida por El Pueblo contra James Francis, por homocidio involuntario, decidida por sentencia dictada el mismo día 21 de mayo de 1912.

El 9 de octubre de 1911 el Fiscal del distrito de San Juan

formuló acusación contra James Francis, imputándole la comisión del siguiente hecho: "Que el citado James Francis, allá el día 23 de agosto de 1911, en la ciudad de San Juan, y en ocasión de manejar un automóvil por las calles de esta ciudad sin la debida prudencia o circunspección, dió muerte ilegal a Encarnación del Manzano y Sucre."

El acusado hizo la alegación de no culpable y solicitó juicio por jurados. El juicio se celebró finalmente el 15 de mayo de 1912, practicándose las pruebas presentadas por ambas partes, dándose al jurado por la corte las instrucciones de ley y rindiendo el jurado un veredicto de culpable. Basándose en dicho veredicto y después de negarse a conceder un nuevo juicio, la corte dictó la sentencia de que se ha hecho mérito condenando al acusado a sufrir la pena de cinco años de presidio con trabajos forzados.

En su alegato la parte apelante especifica los errores cometidos a su juicio por la corte sentenciadora, en la siguiente forma:

"1. Que el veredicto no estaba justificado por la prueba, y por lo tanto, era contrario a la misma.

"2. Que la corte omitió el consignar en sus instrucciones al jurado los puntos esenciales de la defensa del acusado, con la plenitud y claridad que las circunstancias exigían, de acuerdo con los términos de la sección 233, párrafo 8, del Código de Enjuiciamiento Criminal, tal como ha sido enmendado por la Legislatura en el año 1911.

"3. La corte erró además en aquellas partes de sus instrucciones concernientes al peso de la prueba que debe presentar el acusado para justificar el homicidio, al expresarse en estos términos: 'Además, para refutar una acusación de negligencia de parte de la persona perjudicada, es menester satisfacer completamente al jurado, por la preponderancia de la prueba, de estas dos condiciones o requisitos: primero, que la víctima fué negligente, y segundo, que su negligencia contribuyó indudablemente a causar el daño que sufriera, y por esta razón no debe considerarse responsable al acusado, y por lo mismo, para que el acusado no sea considerado responsable, es necesario que se les demuestre a Vds. por la preponderancia de la prueba, que semejante negligencia contribuyó directamente a causar el accidente. (Página 4 del récord.) Y para poder apreciar la negligencia

de parte de la persona perjudicada, como en el caso de que se trata, es necesario que se demuestre a Vds. los del jurado, conforme he dicho, por la preponderancia de la prueba, fuera de toda duda, que la difunta fué negligente y que el accidente fué la consecuencia inmediata de dicha negligencia.' ''

Examinemos el primer error. La prueba practicada consta incluída en una exposición debidamente aprobada y certificada. El primer testigo de cargo que declaró fué Rufino Alomar. Nótanse algunas vacilaciones en las afirmaciones que hace, pero examinando en conjunto su declaración puede concluirse que establece los siguientes hechos: Que el automóvil fué enviado al garage para su composición; que fué desmontado y vuelto a montar y que en el día del suceso salieron a probarlo actuando como *chauffeur* el acusado Francis y yendo en él varias personas entre ellas el testigo; que el automóvil era de 30 caballos de fuerza y marchaba en *high;* que cuando regresaba al garage, al dar la vuelta para bajar por la Marina "iba una vieja y cuando pasó pasábamos y la cogimos, el automóvil le pasó por encima y siguió más allá;" que vieron a la vieja a una distancia como de quince metros; que no pudo apreciar si el automóvil redujo su velocidad; que no se usó el freno de emergencia porque estaba roto; que "el automóvil volvía al garage para arreglarlo porque el freno de emergencia estaba roto; que cuando íbamos en el automóvil que cogió a la señora, íbamos al garage a guardarlo allí para componerlo al otro día, porque la emergencia estaba rota;" que cuando ocurrió el suceso el testigo saltó del automóvil y corrió para su casa y allá fué a buscarlo un policía.

El segundo testigo de cargo fué Pedro Sanguinet, policía insular que se encontraba por los alrededores del sitio donde ocurrió el suceso. Observó la marcha rápida del automóvil, la curva que hizo al bajar, y el hecho de no haber tocado la bocina ni parado su marcha cuando chocó con la anciana y la dejó muerta en el acto.

El tercer testigo fué otro policía llamado Vicente Rivera. Manifestó que el automóvil llevaba mucha velocidad y no tocó

la bocina; que "no usó el freno porque cuando cogió la señora siguió;" que fué a parar a treinta o cuarenta metros; que "lo que le llamó la atención de que la señora había sido atropellada fué la velocidad del carro;" que el carro al subir llevaba una velocidad mayor que la regular; que no detuvo al *chauffeur* porque iba a tanta velocidad que no le dió tiempo; que al bajar la velocidad era aun mayor; que no hizo señas a la señora porque cuando pudo darse cuenta ya la había matado; que el acusado guiaba el automóvil; que el automóvil subió, dió la vuelta por detrás del kiosko de la Marina, cogió la curva y bajó otra vez y entonces fué que arrolló a la señora; que la señora estaba cerca de la acera, casi en la acera.

El cuarto y último testigo de cargo fué el doctor Cueto, médico cirujano; que practicó la autopsia de la víctima, que presentaba manchas cadavéricas con grandes equimosis, y que tenía fracturadas la 6ª., 7ª. y 8ª. costillas, con hundimiento, la pierna derecha y el cráneo.

Por la defensa declararon cinco testigos, a saber: Chas. R. Manes que manifestó que conocía al acusado desde hacía doce años y siempre lo ha tenido por hombre prudente y trabajador.

Domingo Fernández, que dijo que era uno de los que iba en el automóvil: que hicieron "el viaje para probar la máquina a ver si estaba buena para entregarla al dueño;" que al bajar vieron a la señora a bastante distancia; que tocaron la bocina para que se separara un carro de caballos; que parece que la señora oyó la bocina y retrocedió para la acera y fué entonces cogida sin poderlo evitar; que el carro iba defectuoso, "no trabajaba bien y por eso fué que siguió;" que al ocurrir el suceso saltó y salió corriendo no porque huyera, sino porque no le convenía estar allí para que no lo llamaran a declarar.

Leopoldo Fernández, que iba también en el automóvil, expresó que al dar la vuelta el automóvil "salía la señora del 'Bosque' y venía un carro de caballos detrás;" que el acusado tocó la bocina, "la señora echó para atrás y la cogió el

carro con el bota-lodo del lado izquierdo;'' que el automóvil marchaba como a una velocidad de seis a siete millas.

Segundo Hernández, otro de los que iban en el automóvil, depuso que salieron a probarlo, subieron por el Arsenal y al dar la vuelta a la curva del ''Bosque'' cruzaba la señora a una distancia retirada del carro y cruzaba también un carro de caballos; que se tocó la bocina al carro, la señora se asustó, volvió hacia atrás y el automóvil la arrolló entonces y la mató; que se tiró del carro cuando todavía corría y se fué; y

James Francis, el propio acusado, que testificó que es mecánico; que trabaja en la Isla desde hace doce años; que sacaron el automóvil para probarlo; que él lo guió porque el *chauffeur* no quiso hacerlo mientras no se probara; que al bajar iba un carro de caballos con madera y le tocó la bocina para que se quitara '' y en eso la vieja estaba cruzando y al oir la bocina brincó y viró para atrás y al momento no pudo parar el carro y se tiró encima de la vieja;'' que no pudo poner el freno de emergencia porque tenía las dos manos en la rueda; que ''probablemente se podía parar si se hubiera aplicado el freno de emergencia, pero como la distancia era muy poca creía que la vieja no fuera a virar atrás porque estaba pasando ya, pero al tocar la bocina ella brincó para atrás y al verla volver para atrás apliqué los frenos con los pies para echar a un lado para que no la cogiera;'' que llevaba una velocidad como de seis a ocho millas.

Tal es, en resumen, extractada de la exposición del caso, la prueba que sirvió de base al veredicto del jurado. A nuestro juicio, es suficiente para sostenerlo.

De ella aparece con toda claridad que se trataba de una máquina en prueba guiada por el acusado debido a no haber querido hacerse aun cargo de la misma el *chauffeur* encargado de manejarla; que esto no obstante, el acusado puso en *high* el automóvil y marchó, si damos crédito como lo dió el jurado a los testigos de cargo, a gran velocidad por dentro de un recinto urbano, y que a pesar de tener ocasión de ver como a unos quince metros de distancia a un ser humano que cruzaba

la calle, no tocó la bocina, siguió bajando a gran velocidad, y, sin hacer uso del freno de emergencia, lo arrolló, destruyó su cuerpo, le quitó la vida y siguió aún marchando, siendo tal el efecto que produjera el suceso a los que iban dentro del automóvil, que casi todos se retiraron precipitadamente del sitio de la ocurrencia.

No es posible dejar sin castigo un hecho semejante. La ley (Leyes de 1910, pág. 139), prescribe que mientras estuvieren dentro de la zona urbana de un municipio, los automóviles no deberán marchar a una velocidad mayor de diez y seis kilómetros por hora. Es muy difícil poder apreciar a la simple vista el número de kilómetros a que va marchando un vehículo, pero la velocidad de 16 kilómetros es de tal naturaleza que no llama la atención, y en este caso uno de los testigos nos dice que se dió cuenta del suceso debido a haber llamado su atención precisamente la gran velocidad a que marchaba el automóvil.

La ley también prescribe (Leyes de 1910, pág. 141) que al voltear una curva, la persona que dirija un automóvil dará debido aviso por bocina o por otro medio análogo, y que al acercarse o al alcanzar a cualquier persona en el camino en vehículo o de otro modo, el que dirigiere el automóvil tendrá que dar debido aviso y reducir la velocidad a un límite tal que garantice la seguridad de la persona a quien se alcance o pase. Tales preceptos de ley se violaron por el acusado en este caso. El, a toda velocidad, sin tocar la bocina, volteó la curva del ''Bosque'' y bajó, y a pesar de ver a la señora del Manzano a suficiente distancia, y al carro cargado de maderas tirado por caballos, no redujo la velocidad del automóvil, y en vez de garantizar la vida de la persona a quien se acercaba, la destruyó totalmente.

No habiéndose cometido el primero de los errores alegados, examinaremos conjuntamente el segundo y el tercero por referirse ambos a las instrucciones de la corte al jurado.

En cuanto a que la corte omitió consignar en sus instrucciones los puntos esenciales de la defensa del acusado, dire-

mos que hemos examinado cuidadosamente dichas instrucciones en su totalidad y que a nuestro juicio contienen una explicación suficiente de la ley aplicable al caso y de las circunstancias en que puede excusarse un acto de la naturaleza del cometido por el acusado.

Y en cuanto a las instrucciones específicamente señaladas como erróneas, relativas a la prueba de la negligencia contributiva de la víctima, diremos que si algún error se cometió por la corte, tal error no fué perjudicial al acusado.

"La regla predominante es que no existe analogía entre un caso civil sobre indemnización a la parte perjudicada y uno criminal cuyo objeto es castigar el delito, no pudiendo establecerse términos de comparación en cuanto a la negligencia de una y otra parte en acusaciones por delitos graves (*felonies*), y que por tanto será procedente la presentación de una acusación por homicidio en el cual la causa ha sido la negligencia cuando la muerte proviene de las lesiones o daños que se han ocasionado negligentemente, aun cuando la persona a quien se ha causado la muerte haya contribuido a ella con su propia negligencia." Wharton on Homicide, pág. 725.

Y se explica perfectamente que así sea, porque lo que se trata de castigar en un caso criminal de esta naturaleza, es la imprudencia o negligencia del acusado. Y si la acusación demuestra más allá de duda razonable que tales imprudencia o negligencia existieron en tal grado que deban considerarse como la verdadera y principal causa del daño, la acusación habrá demostrado la existencia del delito, sin que tenga la obligación de probar que la víctima no contribuyó con su negligencia a la consumación del daño.

Es indudable que la negligencia de la víctima puede alegarse por el acusado como defensa, y es indudable también que si se alega por el acusado y se prueba su existencia, o si resulta evidente de la misma prueba del Fiscal, puede tomarse en consideración para graduar la responsabilidad del acusado; pero para que tal negligencia constituya una excusa

completa y pueda eximir totalmente de responsabilidad al acusado, tiene que ser de tal naturaleza que lleve al ánimo del juzgador el convencimiento de que más que negligencia contributiva, fué la única negligencia productora del daño.

Un hombre se tiende en el medio mismo de un camino, voluntaria, negligente e inconscientemente. Un *chauffeur* lo observa desde lejos y se limita a tocar la bocina y no reduce la velocidad de su carro en la creencia de que el hombre se levantará. Pero el hombre no se levanta porque no quiere o porque no puede, y cuando el *chauffeur* intenta reducir la velocidad, es ya demasiado tarde. El carro pasa por encima del hombre y le ocasiona la muerte. A nuestro juicio, aun en ese caso el *chauffeur* es responsable criminalmente, pudiendo apreciarse la negligencia o culpa del fallecido para mitigar la responsabilidad del acusado, pero no para eximirlo de culpa por completo.

En cambio si se demostrara que un *chauffeur* dirigía su máquina por una calle o camino de acuerdo con la ley y otra persona se lanzó a cruzar la calle o el camino voluntaria, negligente o inconscientemente cuando el *chauffeur* estaba a tan corta distancia que, ni aun usando el freno de emergencia, le era posible detener su carro, y, en tales condiciones el carro choca con la persona y le ocasiona la muerte, ésta debe imputarse solamente al fallecido y el *chauffeur* quedaría extento de responsabilidad.

Habiendo en consideración todo lo expuesto; teniendo en cuenta que si bien las instrucciones contienen los párrafos a que se ha referido aisladamente el apelante, terminan del siguiente modo: ''Si vosotros creeis que el acusado, al conducir el automóvil, en las condiciones que dice el Fiscal en su acusación, lo hizo sin la prudencia o circunspección necesaria; si vosotros creeis que todos los elementos de ese delito han sido probados, entonces es vuestro deber declarar al acusado culpable del delito que se le imputa. Si vosotros, por el contrario, creeis que los hechos no han pasado como lo refieren los testigos del Fiscal, es decir, que el accidente

no se debió a la negligencia y descuido del *chauffeur*, sino que se debió a los actos realizados por la persona perjudicada, que le colocaron en condiciones fatales, en condiciones que no pudo él evitar el accidente, entonces es vuestro deber declarar al acusado inocente. El acusado tiene también el beneficio de la duda razonable. Si vosotros, aun rindiendo crédito a las declaraciones de los testigos, hay alguna circunstancia que hace vacilar vuestras conciencias ante la consideración de los hechos, es vuestro deber también darle al acusado el beneficio de esa duda razonable, y absolverle. Juez. ¿Tienen las partes instrucciones escritas? Ningunas." Y apareciendo que la prueba toda fué sometida al jurado y demuestra la existencia del delito y sostiene por tanto el veredicto del jurado y la sentencia de la corte, opinamos que, en bien de la justicia, debe declararse sin lugar el recurso interpuesto y confirmarse la resolución apelada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y Aldrey.

El Juez Asociado Sr. MacLeary no tomó parte en la resolución de este caso.