El Pueblo de Puerto Rico, demandante y apelado, *v.* Enrique Rivera Rivera, acusado y apelante.

Núm. 10733.—*Sometido:* Junio 6, 1945. *Resuelto:* Julio 20, 1945.

*Mariano Acosta Velarde* y *Donald R. Dexter,* abogados del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo,* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

El acusado manejaba y conducía una locomotora de la American Railroad Co. que arrolló y causó la muerte de

Petrona Cruz en un paso a nivel de un camino vecinal. Como resultado de ello el Fiscal acusó al apelante de homicidio involuntario, alegando la acusación que manejaba y conducía la máquina que arrolló y ocasionó la muerte de la interfecta "sin observar la debida prudencia y circunspección". Artículo 203, Código Penal, ed. 1937. El pliego de especificaciones radicado por el Fiscal decía que "La negligencia del acusado consistió en conducir a velocidad exagerada la locomotora, no reducir dicha velocidad, ni dar aviso de clase alguno, no obstante acercarse a un paso a nivel." El acusado fué juzgado en la corte inferior por tribunal de derecho; se le declaró convicto y sentenciado a seis meses de cárcel; y el caso se encuentra ante nos en apelación contra la sentencia condenatoria. Examinaremos primeramente el alegado error de que la evidencia fué insuficiente como cuestión de derecho para establecer la culpabilidad del acusado.

■■ La prueba del Fiscal fué que la interfecta retornaba de un sitio donde había obtenido una lata de agua que llevaba sobre su cabeza; que iba por un camino vecinal que conducía a su casa y que intersectaba la vía de la American Railroad Co.; que el ruido del tren que se acercaba podía oírse a una distancia de por lo menos sesenta metros; que si bien ciertos automóviles hacían ruido, predominaba el ruido del tren que se acercaba, afirmando aún algunos de los testigos que ellos "sintieron" el tren; que el tren podía oírse y observarse fácilmente a sesenta metros del paso a nivel por una persona que, como la interfecta, cruzara la vía de izquierda a derecha, porque (a) las vías entraban al paso a nivel curveando a la derecha, (b) la curva no era cerrada y (c) no existían obstáculos naturales que obstruyeran la visibilidad del tren que venía por la curva. Las fotografías introducidas en evidencia reafirman el hecho de que un tren que viniera por la curva podía fácilmente observarse desde el paso a nivel.

Los testigos del Fiscal también declararon que no había guardabarrera en el paso a nivel, que el tren venía "ligero", que paró "lejísimos" del accidente, y que el pito de la locomotora se tocó, bien antes o al momento del accidente. Pero todas estas personas estaban dentro o en los patios de unas casas ubicadas algunos metros distantes de las vías cuando ocurrió este episodio. Y es difícil suponer que el tren, que se había parado para coger agua de un tanque que se encontraba aproximadamente a 250 metros de la curva, pudiera haber desarrollado considerable velocidad cuando llegó al sitio del accidente, que era sólo sesenta metros después de la curva. Los testigos del acusado calcularon la velocidad del tren de 18 a 20 kilómetros por hora, siendo éste un estimado más preciso y razonable, bajo las circunstancias, que el hecho por las personas quienes, sentadas en sus casas contiguas a la vía, vagamente dijeron que venía "ligero".

Pero, aparte de las cuestiones de la velocidad del tren y la alegada falta del acusado de tocar el pito según se le imputa en el pliego de especificaciones, y suponiendo que el acusado manejara el tren a una velocidad excesiva y de que no tocó el pito lo suficientemente antes, todas las circunstancias de este caso, según lo presentan los testigos del Pueblo, nos compelen a concluir que estos alegados actos del acusado no fueron la causa próxima del accidente; sino que al contrario, la muerte de la interfecta fué causada exclusivamente por su propia negligencia.

En *Pueblo* v. *Guadalupe*, 62 D.P.R. 262, dijimos que: "La regla está bien establecida que 'una muerte causada por la negligencia criminal del acusado constituye homicidio, aunque la falta de debido cuidado de la víctima contribuyera o no al accidente.' Warren *on Homicide*, Sección 121, pág. 546. La negligencia contribuyente, en breve, no es una defensa como tal contra una acusación criminal de homicidio involuntario. *Pueblo* v. *Francis*, 19 D.P.R. 692; *Biscamp* v. *State*, 154 S. W.2d 466 (Texas, 1941); *Click* v. *State*, 164

S. W.2d 664 (Texas, 1942); *State* v. *Leopold,* 147 Atl. 118 (Conn., 1929). Según se señaló en *Pueblo* v. *Francis,* supra, la negligencia de la víctima exoneraría al acusado de responsabilidad criminal *únicamente si dicha negligencia fuese la única causa de su muerte."* (Bastardillas nuestras).

Aquí la interfecta era una señora de 58 años de edad que llevaba sobre su cabeza una pesada lata de agua. No hay controversia en cuanto a que ella tenía una clara visibilidad del tren que estaba a 60 metros y que hacía tanto ruido que algunos de los testigos del Pueblo dijeron que se podía "sentir". Toda vez que la prueba demostró que ella no era sorda, indudablemente oyó el tren según lo oyeron todos los otros circunstantes. Pero insistió en cruzar la vía cuando venía el tren y fué arrollada y muerta. Forzoso es concluir por tanto, que con la lata sobre su cabeza, no podía moverla completamente a la derecha y ver cuán peligroso era tratar de cruzar en dicho momento. Por el contrario, aparentemente trató de medir la distancia entre el tren y el cruce guiándose únicamente por el sonido y erró en su cálculo. En resumen, su negligencia al oír solamente y no mirar, fué la única y próxima causa del accidente. Véase *Pueblo* v. *Rodríguez,* 47 D.P.R. 600.

La apreciación que hemos hecho de la prueba del Fiscal hace innecesario examinar los otros errores señalados por el acusado.

*La sentencia de la corte de distrito será revocada, y se dictará otra absolviendo al acusado.*

El Juez Asociado Sr. De Jesús no intervino.