EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MIGUEL ANDINO QUINTANA, acusado y apelante.

Número 16022.

*Sometido:* 1 de noviembre de 1955. *Resuelto:* 3 de noviembre de 1955.

*Rafael A. Arroyo Ríos,* abogado del apelante; *Hon. Secretario de Justicia José Trías Monge, y Rafael L. Ydrach Yordán y Ramón Olivo Nieves, Fiscal y Fiscal Especial, respectivamente, del Tribunal Supremo,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Marrero emitió la opinión del Tribunal.

Miguel Andino Quintana fué acusado ante el Tribunal Superior de Puerto Rico, Sala de Humacao, del delito de homicidio involuntario porque "de manera ilegal y mientras conducía un vehículo de motor, lo hizo sin observar la debida prudencia y circunspección, corriendo y guiando dicho vehículo a más de 15 millas por hora al pasar una zona donde había una escuela ubicada, [lo] que dió lugar a arrollar al niño de seis años de edad ·llamado Juan Rodríguez Amaral, a consecuencia de lo cual murió horas después." Visto el caso ante tribunal de derecho, el juez que lo presidía hizo las siguientes declaraciones al finalizar la prueba de una y otra parte:

"Póngase de pie el acusado. En este caso, de la prueba surge que el día de los hechos este acusado llevaba unos jóvenes de la academia de Humacao hacia el pueblo de Juncos. Que al pasar por la carretera entre Las Piedras y Juncos y en un sitio en que había un rótulo indicando que existía una escuela pública, este acusado iba a velocidad de 35 millas más o menos caminando por la carretera insular. Que en el momento ·antes del suceso en cuestión, venía un zancudo con unos carros de caña. Que del lado izquierdo un niño que tiene 6 años y medio,

o tenía 6 años y medio, cruzó la carretera y le dió por el guardalodo izquierdo al automóvil, con motivo de lo cual falleció.

"Que el acusado en ningún momento vió al niño cuando le dió al automóvil en el lado izquierdo del guardalodo. Que le llamaron la atención y paró a cierta distancia del sitio donde hubo el impacto. La Ley de Automóviles dice lo siguiente:

"(Se imputa al acusado un delito de homicidio involuntario, o sea, que ilegalmente, y mientras conducía un vehículo de motor, lo hizo sin observar la debida prudencia y circunspección, corriendo y guiando dicho vehículo a más de 15 millas por hora al pasar por una zona donde había una escuela pública ubicada.)

" 'La velocidad de un vehículo de motor deberá regularse con el debido cuidado, teniendo en cuenta el ancho, tránsito, uso y condiciones del camino. Nadie deberá guiar a una velocidad mayor de la que le permita ejercer el debido dominio del vehículo y reducir la velocidad o parar cuando sea necesario para evitar atropellar a una persona o chocar con algún vehículo u otro artefacto de transporte que esté en la carretera o entre en la misma ajustándose a los requisitos legales y al deber en que están los conductores y otras personas que usan las carreteras de tener el debido cuidado.'

"Y el inciso *b* de ese artículo, que es el 15, dice que no se deberá correr a una velocidad mayor de 15 millas al pasar por una zona donde hubiere escuelas ubicadas. (¹)

"Es una condición esencial que un automóvil cuando pasa por un sitio donde está indicada la situación de escuelas públicas, debe caminar a una velocidad menor de 15 millas por hora y este acusado caminaba por ese sitio a una velocidad mayor de 15 millas por hora.

"No se puede imputar al menor en este caso que haya sido negligente y que su conducta fué la que dió lugar al accidente en el cual perdió la vida. Cuando se aproxima un automóvil a un vehículo pesado en línea opuesta, debe reducir la velocidad a todo lo más que se pueda para no ocasionar daño a cualquier persona o a cualquier vehículo. Cuando este chófer caminaba por el lado del zancudo que venía cargado de caña, debió haber·

---

(¹) El inciso (*b*) del art. 15 de la Ley 279 de 1946 ((1) pág. 599), según fué enmendado por la Ley núm. 156 de 1951 (pág. 369), dispone en lo esencial que: "Es ilegal conducir un vehículo de motor . . . a una velocidad mayor de quince (15) millas por hora al pasar una zona donde hubiere escuelas ubicadas."

reducido la velocidad todo lo más posible para que así no hubiera ocurrido este accidente.

"Estima el tribunal que si este acusado hubiera tomado las precauciones necesarias que la ley exige, no hubiera ocurrido este accidente. Lo declara culpable de homicidio involuntario." El acusado solicitó la reconsideración inmediatamente. Luego de oír los fundamentos de la misma, el juez sentenciador se expresó una vez más así:

"El tribunal hace constar de nuevo que el joven Jaime Ramírez González dijo que iba a 35 millas que era porque él había visto el espidómetro, pero que iba como a 40 porque iba bajando una cuesta.

"Lo que estima el tribunal es que al acercarse al tractor lleno de caña debió acercarse a la orilla y reducir la velocidad a la mínima expresión que pueda que no hubiera sido el mismo resultado porque la velocidad que llevaba de 35 a 40 millas, al darle a un cuerpo en movimiento le causa un impacto mayor que si va a 5 ó 10 millas y le da a ese cuerpo y por esa situación entiendo que es la grave negligencia del chófer que va por un sitio donde hay escuelas públicas donde se exige que se modere la velocidad y no lo hizo.

"El tribunal lo declara culpable de homicidio involuntario y declara sin lugar la moción de reconsideración."

Más tarde el tribunal sentenció al acusado a sufrir seis meses de cárcel. De esa sentencia el acusado apeló. Sostiene ante nos que el tribunal a quo erró (1) "al concluir, por el solo hecho de las consecuencias del accidente, que la causa verdadera y próxima de la muerte lo fué la falta de prudencia y circunspección por parte del acusado-apelante" y (2) "al apreciar la evidencia." Tanto el acusado como el fiscal discuten conjuntamente los errores señalados. Lo mismo haremos nosotros.

Alega en primer lugar el acusado que la prueba de El Pueblo fué conflictiva, es decir, que hubo contradicciones en los testimonios de Jaime Ramírez González y Amelia Amaral, y que fué un error dar crédito tan sólo a la declaración del primero de esos dos testigos. Discrepamos. Es cosa frecuente que haya contradicciones en la totalidad de la evi-

dencia ofrecida por una misma parte, pero ello no significa que por tal motivo el tribunal deba desechar en su totalidad la prueba aducida por esa parte. El llamado a dirimir el conflicto que pudiere existir, y que en este caso existió en la prueba, lo era el juez sentenciador. Él así lo hizo y dió crédito únicamente a la declaración del niño Jaime Ramírez González. (²)   En ello no incurrió en error.   Sus conclusiones de hechos probados están plenamente sostenidas por la prueba que tuvo ante sí y las mismas no deben ser alteradas *Pueblo* v. *Bastián*. 71 D.P.R. 843.

██ ██   El juez sentenciador no dijo que la causa verdadera y próxima de la muerte lo fué la falta de prudencia y circunspección del acusado.   Su conclusión fué que la causa próxima del accidente la constituyó el hecho de que el apelante incurrió en negligencia al conducir su vehículo a velocidad excesiva por un sitio donde por disposición expresa de ley se exige que los vehículos corran a una velocidad moderada, es decir, a no más de 15 millas por hora.

---

(²) Jaime Ramírez González declaró, según muy acertadamente sintetiza su testimonio el fiscal especial: "que tiene 11 años de edad; que vive en Juncos y asiste a la Academia San José en el pueblo de Humacao, donde cursa el séptimo grado.   (T. E. 7)   Para el 8 de noviembre de 1954 acostumbraba a ir de su casa en Juncos a la escuela en una guagüita.   Conoce al acusado ya que viajaba casi todos los días desde la escuela y de regreso a su casa (T. E. 8) en una guagüita pisicorre marca Ford.   Específicamente el día 8 de noviembre de 1954, de tres a tres y cuarto de la tarde, salió de la Academia y Miguel (el acusado a quien señala) tenía estacionada su guagua frente a la escuela.   Montó en el vehículo y cuando llegaron ocho niños más, salieron hacia Juncos.   (T. E. 9)   Pasaron por Las Piedras y entre este pueblo y Juncos, en una parte que se llama Guardarraya, al pasar por un letrero que dice 'Escuela' pasó un tractor arrastrando dos vagones de caña.   En seguida él sintió un golpe en el guardalodo izquierdo de la guagua y al mirar hacia atrás vió a un nene dando vueltas en el aire.   Dirigiéndose al acusado le dijo que parara que había matado a un nene.   (T. E. 10)   En esos momentos estaba pasando un *truck* y el acusado detuvo su vehículo y caminó hacia atrás.   Ya el *truck* estaba también detenido.   (T. E. 11)   Los hechos sucedieron como 25 yardas antes de la escuela (T.E.12) y el niño cayó como a 35 pies más o menos de ésta. (T. E. 15)   En el momento en que la guagua cogió al niño ya se había pasado el rótulo primero que dice 'Escuela'.   (T. E. 16)   La guagua que le dió al niño fué la de Miguel.   De Juncos para Las Piedras, venía un tractor, un *truck* y luego otro tractor.   Cuando la guagua golpeó al niño

Desde luego, fué un error del tribunal a quo manifestar que "cuando se aproxima un automóvil a un vehículo pesado en línea opuesta, [aquél] debe reducir la velocidad a todo lo más que se pueda para no ocasionar daño a cualquier persona o a cualquier vehículo   Cuando este chófer caminaba por el lado del zancudo que venía cargado de caña, debió haber reducido la velocidad todo lo más posible para que así no hubiera ocurrido este accidente."   Tal obligación no es impuesta al conductor de un vehículo por el contexto de la Ley de Automóviles y Tránsito (núm. 279 de 1946, supra) ni por ninguna otra ley conocida por nosotros.   Lo que sí dispone en lo esencial la Ley 279, en su art. 17 (e), según fué enmendado por la Ley 96 de 1953 (pág. 347) es que "los conductores o chóferes de vehículos que marchen en direcciones opuestas se cruzarán mutuamente por sus derechas respectivas y cederán mutuamente, siempre que sea posible, no menos de la mitad de la parte más transitada de la calzada para vehículos."   También en su art. 17 (a), en términos generales

ya la goma del último vagón del tractor se había separado como un pie de la guagua.  (T. E. 18)   El niño salió del segundo vagón del tractor y el guardalodo izquierdo fué el que lo golpeó.  La guagua en que él venía corría a una velocidad de 40 millas más o menos.  (T. E. 20)   La agujita (se refiere al espidómetro) marcaba como 35 millas pero como venían bajando él calcula que desarrolló como 40 millas.  El acusado no tocó *claxon*. (T. E. 21)   Desde donde el vehículo le dió al niño hasta donde se detuvo después de poner los frenos señala una distancia como de 46½ pies, según medidas tomadas en el tribunal.  (T. E. 22)

"En el contrainterrogatorio declaró que él ocupaba en el asiento del medio de la guagua, la parte izquierda pegado a la puerta.  (T. E. 24) Él ya conocía a Miguel el acusado y la guagüita era la que por lo regular utilizaban para ir a Juncos.  (T. E. 26)   Los carros del zancudo iban llenos de caña o de rabos de caña.  El accidente ocurrió acabando de pasar los dos carros del zancudo.  Detrás venía un camión y detrás otro zancudo. (T. E. 26)   Cuando él le dijo al acusado que había matado a un nene fué cuando vió salir al *truck* de la curva.  Al pasar la guagua por el lado del zancudo no chocó con nada del zancudo ya que los carros de caña iban bien por su derecha.  (T. E. 27)   Cuando él le dijo a Miguel que había matado a un niño, éste aplicó los frenos y se detuvo como a 4 o cinco pies. (T. E. 29)   El muchachito salió de detrás del carro de caña.  (T. E. 30) Cuando Miguel detuvo el vehículo y se apeó estaba nervioso.  (T. E. 32) Una señora cogió al nene y lo montaron en el asiento delantero de la guagüita y salieron hacia Humacao.  (T. E. 33)"

que: "Las personas que manejen vehículos (de motor) en los caminos públicos, deberán en todo tiempo ejercer el debido cuidado y tomar precauciones razonables para garantizar la seguridad de vidas y propiedades." El error, sin embargo, no debe dar lugar a la revocación de la sentencia, toda vez que al declarar culpable al acusado del delito imputádole el fundamento principal del juez sentenciador fué que aquél incurrió en negligencia al conducir su vehículo a una velocidad de más de 15 millas por una zona escolar.

Aún en el supuesto de que pudiera imputársele negligencia al menor al irrumpir súbitamente en el lado de la carretera por donde marchaba el vehículo del acusado, tal negligencia no debe producir la exoneración de éste ya que, conforme dijimos en *Pueblo* v. *Guadalupe*, 62 D.P.R. 262, 264, "una muerte causada por la negligencia criminal del acusado constituye homicidio, aunque la falta de debido cuidado de la víctima contribuyera o no al accidente. . . . la negligencia de la víctima exoneraría al acusado de responsabilidad criminal únicamente si dicha negligencia fuese la única causa de su muerte." En *Pueblo* v. *Rivera*, 65 D.P.R. 319, ratificamos la anterior doctrina, mas exoneramos al acusado por haber concluído que la negligencia de la víctima había sido la única y próxima causa del accidente. Véase también *Pueblo* v. *López*, 77 D.P.R. 607.

*No habiéndose cometido los errores señalados, la sentencia apelada debe ser confirmada.*

