Joaquín Mendoza Aldarondo, demandante y recurrente, *v.*
Asociación de Empleados del Gobierno de Puerto Rico,
demandada y recurrida.

*Número:* R-65-209        *Resuelto:* 19 de mayo de 1967

*Martín Almodóvar Acevedo* y *Felipe Benicio Sánchez,* abogados del recurrente; *Luis E. García Benítez* y *María Luisa León Valiente,* abogados de la recurrida.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Dávila.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

Punto principal a resolver en este recurso: Si un empleado público acogido al sistema de seguro mantenido por la Asociación recurrida, cuya solicitud de cambio de segunda a primera categoría fue denegada por su Junta de Directores,

tiene derecho no obstante, a cobrar el seguro de primera categoría por haber sido notificado por error del Secretario Contador de la Asociación que su solicitud había sido aprobada, haciéndose los descuentos de las cuotas correspondientes a la primera categoría durante los cuatro años siguientes.

Las partes sometieron el caso para resolución al tribunal de instancia por la siguiente estipulación:

### *"Estipulación de Hechos*

"Comparecen las partes representadas por sus respectivos abogados y estipulan los siguientes hechos:

1—El demandante Joaquín Mendoza Aldarondo prestó servicios al Estado Libre Asociado de Puerto Rico como policía insular, habiéndose acogido a una pensión por haber quedado físicamente incapacitado.

2—Mientras prestaba servicios en la policía se hizo miembro de la Asociación de Empleados del Gobierno de Puerto Rico y se acogió al seguro por incapacidad física o muerte de dicha Asociación perteneciente a la segunda categoría.

3—Que en marzo de 1959, solicitó un cambio de categoría en el seguro por incapacidad o muerte para subir de la segunda categoría a la primera categoría.

4—Que como consecuencia de esta solicitud, fue sometido a un examen por el médico de la Asociación quien recomendó a la Junta de Directores que se le denegara el cambio de categoría, lo que nunca se le notificó al demandante.

5—Que el 17 de marzo de 1959, se reunió la Junta de Directores de la Asociación de Empleados y según las notas taquigráficas obrantes en el expediente del caso, aparece que se confirmó la recomendación del médico y denegada la solicitud de cambio de categoría.

6—Que el 26 de marzo de 1959, la Asociación dirigió una comunicación al señor Ramón Torres Braschi, Superintendente de la Policía, la que transcrita literalmente lee como sigue:—

'En la sesión celebrada por la Junta de Directores de esta Asociación el día 17 del corriente, se aprobó el cambio a la primera categoría del seguro al señor Joaquín Mendoza Al-

darondo quien presta servicios en este departamento y por lo tanto a partir de esta fecha se le debe descontar a este empleado la cuota correspondiente a la primera categoría.'

7—Que a virtud de esta comunicación, se procedió a descontar al demandante la cuota correspondiente a seguro de primera categoría.

8—Que igual comunicación se le dirigió al demandante informándole que su solicitud había sido aceptada.

9—Que a partir de abril de 1959 a febrero de 1963 se le hicieron descuentos de su sueldo para pagar cuotas correspondientes a la primera categoría.

10—En febrero de 1963 solicitó y fue aprobada una reclamación por incapacidad física bajo la póliza de seguro de la Asociación.

11—El 21 de marzo de este mismo año se le notificó que se le habían hecho descuentos por un error administrativo y que él pertenecía a la segunda categoría de seguros y no a la primera categoría como constaba en la notificación de 24 de marzo de 1959.

12—En febrero de 1964 solicitó una reconsideración a la Junta de Directores de la Asociación de la determinación hecha en marzo de 1963 y dicho organismo se reafirmó en su decisión original de que el demandante se había acogido al seguro de segunda categoría y no al de primera categoría.

13—Que la Asociación le pagó en su totalidad el seguro por incapacidad física correspondiente a la segunda categoría montante a la suma de $4,758.43 y le devolvió la diferencia que le habían cobrado en cuotas de primera y segunda categorías, desde abril de 1959 hasta la fecha de cese en febrero de 1963.

14—Que a marzo de 1963, el valor del seguro de segunda categoría era de $4,758.43 y el de primera categoría era de $7,089.60.

15— .        .        .        .        .        .        .        .

16—Que el demandante sostiene que tiene derecho a que se le pague la póliza como participante de primera categoría y no como de segunda categoría y que de haber habido algún error, el mismo, no le es imputable a él y no puede ser perjudicial al demandante.

17—La demandada sostiene que el hecho de que se le hicieran descuentos como participante de primera categoría se debió a un error que no le da ningún derecho ya que la Junta de Directores nunca aprobó el cambio de seguro según lo requiere la Sección 856 del Título 3 de LPRA y ésta sólo viene obligada a pagar el importe correspondiente a la segunda categoría."·

Por convenio de las partes a la estipulación se adicionaron y enmendaron ciertos hechos en la siguiente forma:

"1. La fecha en que el demandante solicitó el cambio de categoría en el seguro por incapacidad física o muerte fue 3 de septiembre de 1958 y no marzo de 1959 según se expresó en el párrafo 3 de la estipulación de 31 de mayo de 1965.

2. En febrero de 1963 el demandante solicitó y le fue aprobada por la demandada el pago del seguro por incapacidad física permanente por haber sufrido una fractura por compresión de las vértebras D.12 y D.13. Se acompaña Exhibit 1, Historial y Examen Físico del demandante en Febrero 14, 1963."

El 21 de septiembre de 1965 el tribunal de instancia declaró sin lugar la demanda, pero ordenó a la demandada pagar al demandante el interés legal sobre la suma que le fue descontada en exceso de las cuotas que correspondían a la segunda categoría. El lacónico fundamento del fallo recurrido es así:

"Entendemos que el demandante no tiene derecho a capitalizar el error oficinesco de la demandada al notificarle su resolución."

En apelación sostiene el demandante que la sentencia y las conclusiones del tribunal a quo son erróneas y contrarias a la ley, por los siguientes fundamentos:

"(a) Las conclusiones de derecho y la sentencia no están justificadas en forma alguna por la prueba presentada a virtud de la estipulación suscrita, y son contrarias a las conclusiones de hecho a que llegó el Tribunal.

(b) De los autos aparece claramente que desde la fecha de la supuesta resolución de la Junta de Directores de la demandada, denegando la solicitud del demandante-recurrente, a la

fecha de la resolución de dicha Junta a los efectos de que él no tenía derecho a seguro por incapacidad física o muerte, perteneciente a la primera categoría, transcurrieron 46 meses.

(c) Que a pesar de ello, el Tribunal cometió error al no resolver (1) que la demandada había hecho una renuncia de esa defensa; (2) al no resolver que los demandados-recurridos estaban impedidos por su conducta de levantar esa defensa.

(d) Que la referida sentencia es inequívocamente errónea porque no consideró el hecho de que la conducta de la recurrida privó al demandante-recurrente de pedir, cuando era empleado del Estado Libre Asociado de Puerto Rico, la reconsideración de la supuesta resolución de la Junta de Directores denegando el cambio de categoría del peticionario.

(e) Que la sentencia es inequívocamente errónea al no aplicar la norma unánimemente establecida a favor del asegurado y en contra de la aseguradora en situaciones similares, como la del caso de epígrafe."

Como lo han hecho las partes, discutiremos conjuntamente los puntos señalados en este recurso.

Consideraremos el recurso a la luz de las pertinentes disposiciones legales en vigor entre el 3 de septiembre de 1958 y el 24 de marzo de 1963, período en que se desarrollan los acontecimientos envueltos en el asunto.

A virtud de la Ley Núm. 133 de 1952, por octava vez quedó enmendada la Sec. 20 de la Ley Núm. 52 de 1921, estatuto orgánico original de la asociación.[1] Se volvió a crear por esa enmienda el seguro por muerte y por inutilidad física, dividiéndose en dos categorías que se denominarían primera y segunda clase, perteneciendo a la primera categoría los que expresaran su voluntad de satisfacer una cuota mensual de un dólar por cada defunción o inutilidad y a la segunda los que pagaran una cuota de cincuenta centavos por dichos conceptos.

---

[1] Derogado por la Ley Núm. 133 de 28 de junio de 1966, que empezó a regir el 1 de enero de 1967. Hoy la recurrida se denomina "Asociación de Empleados del Estado Libre Asociado de Puerto Rico".

Conforme a la Sec. 25 de la Ley Núm. 52, según enmendada, para acogerse a los beneficios del sistema de seguro el funcionario o empleado permanente debería presentar una solicitud dirigida al Presidente de la Junta de Directores de la Asociación, acompañada de una fotografía suya y de su certificado de nacimiento. Dicho presidente endosaría al médico de la Asociación la solicitud y demás documentos para que el médico practicara el examen o exámenes que creyere conveniente hacer al candidato, rindiendo el médico el correspondiente informe del resultado del examen. La Junta de Directores resolvía la petición y si la aprobaba comunicaría su resolución al solicitante y al departamento u oficina en que trabajara disponiendo que se hicieran los descuentos correspondientes. Si la solicitud de ingreso se denegaba, entonces la resolución se comunicaba únicamente al funcionario o empleado solicitante.

Respecto al cambio de segunda a primera categoría, decía el Disponiéndose del segundo párrafo de esa Sec. 25:

"*Disponiéndose,* que todo socio que goce de los beneficios de las secs. 1 a 27, que solicitare cambiar de segunda a primera categoría de seguro, o que solicitare su seguro por incapacidad total y permanente para trabajar, será sometido a un examen médico, *siguiendo el mismo procedimiento a que se someten los empleados que soliciten ingreso, y debiendo la solicitud ser aprobada por la Junta de Directores.*" (Énfasis suplido.)

El 3 de septiembre de 1958 el recurrente, policía insular asegurado, que tenía "como 18 años" de pertenecer a la segunda categoría, solicitó "cambiar mi clasificación a socio de primera categoría." Exh. I. Sometida su solicitud escrita al médico de la Asociación, este facultativo después de practicar los exámenes que creyó convenientes, rindió el siguiente informe el 29 de marzo de 1959:

"Denegar. Este señor sufrió un accidente del trabajo fracturándose ambas muñecas. Recibiendo del F. S. E. aproximadamente 30% de incapacidad de ambas muñecas, siéndole compen-

sado dicho accidente con la cantidad de $1,300. Existe ligera limitación a los movimientos extremos de dichas articulaciones y ligera pérdida de fuerza."—Exhibits XI y XII.

A base de tal informe adverso la Junta de Directores, en su reunión ordinaria celebrada el 17 de marzo de 1959, denegó el cambio a primera categoría solicitado. Sin embargo, siete días después, el 24 de marzo de 1959, el Secretario Contador de ese organismo remitió al entonces Superintendente de la Policía de Puerto Rico la comunicación que se inserta en el párrafo 6 de la estipulación.

El 30 del mismo mes, el mismo Secretario Contador también comunicó al recurrente que "Su solicitud de cambio de categoría en el seguro *fue aprobada* por la Junta de Directores en la reunión celebrada el día 17 del corriente . . . ." —Exh. III.

Durante los cuatro años subsiguientes, según fue estipulado, se hacen los descuentos del sueldo correspondientes al seguro de primera categoría. A principios de 1963 el recurrente reclama a la Junta de Directores el Seguro por inutilidad física permanente. Se le aprueba el 27 de febrero de ese año, pero entonces se le paga el seguro de segunda categoría montante a $4,758.43, devolviéndosele "el importe de la diferencia en las cuotas de primera y segunda categoría . . . ". El monto del seguro de primera categoría era de $7,089.60, que representa una suma adicional de $2,331.17.

No conforme el recurrente con la resolución de la Junta pidió a la misma su reconsideración. Se le deniega, comunicándosele:

"En los expedientes que obran en nuestro poder se desprende que en la reunión ordinaria celebrada por la Junta de Directores de esta Asociación el día 17 de marzo de 1959 dicho organismo denegó su solicitud de cambio de categoría en el seguro, de segunda a primera, de conformidad por el informe rendido por el Departamento Médico. De acuerdo con los documentos en nuestro poder un empleado de estas oficinas cometió el error

de comunicarle, tanto a usted como al Superintendente de la Policía, que el referido cambio de categoría había sido aprobado. Desde la fecha de dicha comunicación se le descontó en nómina para el pago de las cuotas de primera categoría.

La información que le he ofrecido en el párrafo anterior se presentó a la consideración de la Junta de Directores en la reunión celebrada por éstos el día 13 del corriente mes. La Junta de Directores acordó que la Asociación no viene obligada a pagar el seguro de primera categoría por cuanto usted no pertenece a dicha categoría según el dictamen que se hizo en su caso el día 17 de marzo de 1959. La Junta de Directores entiende que el error cometido por el empleado que le notificó a usted y al Superintendente de la Policía que se había aprobado el cambio de categoría en el seguro, de segunda a primera categoría, no altera el hecho de que en realidad su petición fue denegada."

Hasta el 31 de diciembre de 1966 el gobierno de la Asociación estuvo a cargo exclusivo de una Junta de Directores, en la que las tres ramas del Estado Libre Asociado estaban representadas.[2] Designaba un secretario-contador para llevar la contabilidad, el libro de actas, quien cumplía todos los demás deberes que le fueran impuestos por la Junta de Directores. La Junta tenía facultades para dictar reglas y reglamentos, que tenían fuerza de ley sin ulterior requisito. La resolución de casos de seguro por muerte o inutilidad física era función exclusiva de la Junta.—Véanse Secs. 19 a 21—Ley Núm. 52 de 1921 y sus enmiendas en 3 L.P.R.A. secs. 850–852.

El 17 de marzo de 1959, repetimos, se deniega por resolución de la Junta de Directores la solicitud de cambio a primera categoría. Procedía que se hiciera por el secretario-

---

[2] Hoy la Asociación se gobierna por una Asamblea de Delegados que a su vez delega en una Junta de Directores aquellas funciones gerenciales que crea convenientes. La Junta designa un Director Ejecutivo y le fija sueldo. Éste es secretario de la Junta y el funcionario ejecutivo de la Asociación "y cumplirá con los deberes que la Junta de Directores le asigne . . .". Arts. 5 y 7, Ley Núm. 133 de 1966.

contador la notificación de tal resolución denegatoria. Pero es tal secretario-contador—y no "la Asociación" como reza la transcrita estipulación en su párrafo 6—quien nueve días más tarde, usando un formulario de carta de descuento de cuotas, le remite al Superintendente de la Policía, la primera errónea comunicación informándole que ". . . la Junta de Directores . . . aprobó el cambio a la primera categoría del seguro . . . y por lo tanto a partir de esta fecha se le debe descontar a este empleado la cuota, etc."

Y también es ese empleado, quien en cumplimiento de su deber ministerial de notificar resoluciones envía la segunda errónea comunicación al policía Joaquín Mendoza Aldarondo, el 30 de marzo de 1959. Utiliza para ello, según se desprende del Exh. III, otro formulario de carta al empleado, para llenarse en casos de aprobación de su solicitud de cambio de categoría en el seguro. Tal formulario tiene impreso lo siguiente:

"Sr. ......................................................................................

Estimado ................................................................................

Su solicitud de cambio de categoría en el seguro fue aprobada por la Junta de Directores en la reunión celebrada el día ......................................................................................

Hemos notificado al ................................ para que le hagan los descuentos correspondientes a la primera categoría a partir de ......................................................................................

Cordialmente,

Secretario Contador."

En la tramitación y resolución final de la solicitud se siguió fielmente el curso fijado por la ley: radicación de la solicitud, traslado de la misma al médico de la Asociación, práctica de los exámenes médicos correspondientes, radicación de los informes y observaciones médicos, resolución final por la Junta.

El secretario-contador espera hasta el 26 de marzo de 1959, nueve días después, para notificar la resolución al Superintendente de la Policía y trece días después al empleado. Toma, para realizar ese deber ministerial o clerical, tales formularios de cartas preparados para notificar resoluciones de la Junta aprobando cambios de categoría de seguro, los llena, firma y remite, respectivamente, en esas dos fechas, 26 y 30 de marzo. Así notifica una supuesta aprobación de la solicitud de cambio que jamás había autorizado la Junta de Directores.

Se cometió, inadvertida e involuntariamente por falta del debido cuidado secretarial, el error de notificación que ha originado este recurso. Factor a tomarse en cuenta para explicar el error y principalmente el indebido descuento mensual de cuota de la primera categoría durante cuatro años, es la circunstancia de no haberse hecho constar por escrito la resolución denegatoria de la Junta. En el párrafo 5 de la estipulación se hace constar:

"Que el 17 de marzo de 1959, se reunió la Junta de Directores de la Asociación de Empleados y según las notas taquigráficas obrantes en el expediente del caso, aparece que se confirmó la recomendación del médico y denegada la solicitud de cambio de categoría."

No hay prueba, ni sobre ello se estipuló en forma alguna, de que a conocimiento de la Junta de Directores llegara el hecho de esas notificaciones erróneas. Es a principios de 1963 que el empleado hace su reclamación del seguro por incapacidad física permanente. En ocasión de esa reclamación se descubre por la Junta los errores de marzo de 1959, cometidos por el secretario-contador cuando intentó hacer la notificación de la resolución denegatoria recaída. Se procede en mayo 15 de 1964, a hacer la liquidación del seguro de segunda categoría.

La Junta de Directores estaba compuesta de 13 miembros seleccionados por una Asamblea de Delegados cada dos años.

No hay en autos información sobre los cambios de sus miembros desde el 17 de marzo de 1959 hasta febrero de 1963.

Hasta donde alcanza nuestro conocimiento, no sabemos si al nivel judicial se ha incurrido en errores similares, o sea si en algún caso el secretario ha notificado a las partes una sentencia declarando sin lugar una demanda, informándoles que el tribunal la declaró con lugar. En la esfera administrativa es el primero que conocemos.

■ [Errores de tal naturaleza y seriedad no son comunes. Cuando ocurren tales circunstancias, se debe presumir que las ha motivado el error antes que la mala intención.]

■ [Ningún error, equivocación, falta o descuido en la notificación ministerial de una decisión puede afectar o alterar la verdad de la misma, su contenido jurídico, su virtud o eficacia legal. Podrá detener o prolongar el ejercicio de los recursos que contra la misma se autoricen o el procedimiento para su ejecución, o ser tan ineficaz la diligencia de notificación—por ejemplo, si sólo se hace por teléfono—que equivalga a no haberse hecho en tiempo alguno. Pero el contexto de la decisión, su sentido y efectos, continuarán siendo los mismos.]

Tanto el antiguo Código de Enjuiciamiento Civil como las Reglas de 1943 y 1958, han provisto varios remedios para corregir errores procesales.

En *Martínez* v. *Tribunal Superior*, 83 D.P.R. 717, 721 (1961) resolvimos que los organismos administrativos tienen facultades para corregir errores independientemente de lo que se establezca por la propia ley que los crea. Citamos de allí *American Trucking Assn.* v. *Frisco Co.*, 358 U.S. 133 (1958), lo siguiente:

"Naturalmente, la facultad de corregir errores ministeriales cometidos por inadvertencia no puede utilizarse como pretexto para enmendar decisiones previas porque la sabiduría de tales decisiones resulte dudosa a la luz de sistemas cambiantes . . .".

A la pág. 722, dijimos lo siguiente en ese caso:

"En realidad lo que estamos haciendo es aplicando a los organismos administrativos los mismos principios que informan las disposiciones de la anterior Regla 60a de las de Enjuiciamiento Civil y la 49.1 de las de Procedimiento Civil de 1958 que establece que '[l]os errores de forma en las sentencias, órdenes u otras partes del expediente y los que aparezcan en las mismas por inadvertencia u omisión, podrán corregirse en cualquier tiempo, a su propia iniciativa [de la corte] o a moción de cualquier parte, previa notificación, si ésta se ordenare . . . .' *American Trucking Assn.* v. *Frisco Co.*, supra. Si se ha considerado justo y razonable aplicarla a las sentencias dictadas por los tribunales de justicia, todavía es más razonable aplicarla a los organismos administrativos que son creados precisamente para que funcionen sin la inflexibilidad que generalmente caracteriza a los tribunales. Véase *Sucn. Rosario* v. *Sucn. Cortijo*, 83 D.P.R. 678 (1961)."

■ En varias ocasiones hemos dicho que ninguna parte en un procedimiento tiene un interés adquirido en los errores gramaticales y de procedimiento incurridos por su adversario.([3]) En el presente caso el error lo comete el secretario-contador de la Junta al comunicar la decisión de la Junta. Si se hubiera advertido a tiempo, ese empleado por su propia iniciativa o por orden de la Junta hubiera hecho correctamente la notificación. Ejemplo de un error por inadvertencia lo encontramos en *Pueblo* v. *Miranda*, 56 D.P.R. 601, 603 (1940) en el cual se dijo:

"La sentencia que en corte abierta y en presencia del acusado dictó la corte inferior, lo declaró culpable de infracción a la ordenanza municipal número 249. (T. de E., pág. 8.) Fue al registrar la sentencia el Secretario, que cometió el error de expresar que el acusado había sido culpable de infracción a la 'Ley

---

([3])*Serra* v. *Autoridad de Transporte*, 68 D.P.R. 626, 629 (1948); *Meléndez* v. *Iturrondo*, 71 D.P.R. 60, 64 (1950); *Mariani* v. *Christy*, 73 D.P.R. 782, 789 (1952); *Millán* v. *Caribe Motors Corp.*, 83 D.P.R. 494, 510 (1961).

de Autos,' error que como se ha resuelto reiteradas veces por este tribunal, puede ser subsanado en cualquier momento. *Marvin & Jones, Inc.* v. *Torres,* 19 D.P.R. 48, y *Cintrón* v. *A. Hartman & Co.,* 43 D.P.R. 179, 185, en el último de los cuales se dijo: 'Y esos errores clericales pueden corregirse aun después de confirmado el fallo en apelación. (Citas.)' "

■ La ley siempre exigió que toda solicitud de cambio de categoría debía "ser aprobada por la Junta de Directores." De modo que únicamente en el caso de haber sido aprobada es que procede el pago a base de la primera categoría. Como afirma la recurrida en su alegato si la Asociación pagara el seguro de primera categoría estaría actuando en contra de la ley.

■ El mero cobro de cuotas correspondientes a la primera categoría durante cuarenta y seis meses, no implica renuncia alguna o impedimento a invocar la validez de la sentencia. En primer lugar, la Junta desconocía el error; en segundo lugar, tales renuncias o impedimentos, cuando hay facultad para hacerlas, u observar conducta que los constituya, deben ser intencionales y respecto a derechos que se conozcan. Para que se entienda que una persona renuncia sus derechos debe tener cabal y actual conocimiento de los mismos y su intención de renunciarlos debe ser clara.

■ Lo que se pretende en este caso es que se proceda a liquidar un seguro de primera categoría, en la hipótesis de que la resolución del 17 de marzo de 1959 denegando el cambio, dictada previo cumplimiento total de las condiciones precedentes de ley, resultó revocada por el cobro de esas cuarenta y seis cuotas y en su lugar existe un estado de derecho en favor del empleado equivalente a una resolución aprobando en tiempo y forma el cambio. Ello no se puede aceptar. La integridad, seriedad y obligatoriedad de las decisiones dadas conforme a ley, es cuestión de orden público, y hasta que las mismas sean revocadas, anuladas o modificadas, también con-

forme a ley, deben ser acatadas y cumplidas tal como se dictaron. La necesidad de así reconocerlo supera los inconvenientes y posibles perjuicios a las partes interesadas, con mejor razón cuando se trata de errores ministeriales, clericales u oficinescos, incurridos con posterioridad a la fecha del fallo.

■ En *Infante* v. *Tribl. Examinador Médicos*, 84 D.P.R. 308 (1961) hicimos un análisis de varias decisiones nuestras en que estaban envueltas actuaciones erróneas de varios organismos administrativos, posteriormente rechazadas. En ellas confirmamos las actuaciones finales en contrario de esas agencias porque estuvieron "inspiradas en el estricto cumplimiento de la ley." A la pág. 316, en el caso de *Infante*, refiriéndonos al de *Vives* v. *La Junta de Farmacia*, 24 D.P.R. 669 (1916), hicimos constar:

"Expresamente se dijo en dicho caso que no era posible, en casos de esta naturaleza, en que el interés público aparece seriamente afectado, aplicar el precepto legal de que nadie puede ir contra sus propios actos. 'Este principio de derecho—se dijo a la página 672—puede aplicarse siempre en las ·relaciones civiles de unos ciudadanos para con otros; pero nunca en las relaciones del ciudadano para con el Estado, cuando hay de por medio una cuestión de interés público que se interpone como barrera, en defensa de los derechos de la colectividad.' Véase además, *Quirós* v. *Junta de Farmacia*, 48 D.P.R. 682."

La ley aplicable al caso de *Infante* exigía que para obtener licencia para ejercer la profesión de médico cirujano en la Isla de Puerto Rico, se debería poseer un diploma de médico cirujano expedido por alguna universidad acreditada, registrada por el Tribunal Examinador de Médicos. La universidad que expidió el diploma de médico cirujano que tenía el doctor Infante nunca había sido registrada por dicho tribunal. No obstante ello, se le admitió a examen en la equivocada creencia de que su caso estaba cubierto por la ley. Alegó el doctor Infante "que la tarjeta de admisión a exámenes que le remitiera la Junta . . ., equivale a un reconocimiento y

registro por la Junta . . . que impide al actual Tribunal Examinador de Médicos a negarle admisión a exámenes bajo las disposiciones de la Ley de 1931." Resolvimos que no existía tal impedimento. Después de hacer referencia a varias decisiones continentales, dijimos finalmente:

"Todas estas decisiones siguen la regla general de que de ordinario no surge el *estoppel* por razón de las actuaciones de los funcionarios y agentes gubernamentales. Si bien se ha resuelto que en ciertos casos el gobierno puede estar sujeto a la doctrina de *estoppel,* no creemos que dada las circunstancias aquí concurrentes deba aplicarse dicha doctrina al Tribunal Examinador de Médicos. En su consecuencia resolvemos que dicho Tribunal no estaba impedido de negarse a admitir a examen al doctor Infante."

*Por todo lo expuesto concluimos que los errores señalados no fueron cometidos. Se confirmará la sentencia recurrida.*