ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **EDGARDO QUIÑONES RIVERA y OTROS**<br><br>Apelantes<br><br>v.<br><br>**MAPFRE PRAICO INSURANCE COMPANY**<br><br>Apelado | KLAN202400536 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Humacao**<br><br>Civil Núm.: **HU2023CV1316**<br><br>Sobre: Daños Incumplimiento de Contrato |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de julio de 2024.

Comparecen ante nos el señor Edgardo Quiñones Rivera y la señora Sylvia Pérez Rivera (en conjunto, parte apelante) en solicitud de que revisemos una *Sentencia* emitida el 5 de abril de 2024 por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI).[1] Por virtud del referido dictamen, el TPI declaró Ha Lugar la *Moción de Desestimación y Sentencia Sumaria* presentada por MAPFRE PRAICO Insurance Company (MAPFRE o parte apelada) y, en consecuencia, desestimó con perjuicio la *Demanda* instada por la parte apelante.

Por los fundamentos que expondremos a continuación, se adelanta la conformación del dictamen apelado.

**I.**

La controversia que nos ocupa tiene su origen el 7 de septiembre de 2023, fecha en que el señor Quiñones Rivera y la

---

[1] Apéndice de *Apelación*, Anejo V, págs. 148-168. Archivada y notificada el 10 de abril de 2024.

señora Pérez Rivera presentaron una *Demanda* contra MAPFRE por incumplimiento de contrato y daños contractuales.[2] En esencia, la parte apelante adujo que para el 20 de septiembre de 2017, fecha en que el Huracán María atravesó sobre Puerto Rico, era propietaria de una vivienda sita en Humacao, Puerto Rico, cubierta con una póliza emitida por MAPFRE para el periodo de vigencia del 30 de noviembre de 2016 al 30 de noviembre de 2017. Arguyó que dicha póliza cubría las pérdidas y los daños sufridos por su propiedad, cubierta A para vivienda o *dwelling* por la cantidad de por $106,880.00. A su vez, alegó que como consecuencia de las tormentas de vientos ocurridas por el paso del aludido Huracán, su propiedad sufrió pérdidas en las rejas del portón de la marquesina, tratamiento de techo concreto, techo interior, en las paredes agrietadas, pintura, calentador solar, cisterna, techo de tejas, ventanas, puertas de closets, verjas de alambre eslabonada y luces exteriores. Afirmó que dichos daños estaban cubiertos por la póliza, puesto que los vientos ocasionaron una abertura en el techo o pared, provocando así que el agua entrara a la propiedad. Puntualizó que el 16 de noviembre de 2017, formuló una reclamación contra MAPFRE. Sostuvo que la parte apelada subvaloró los daños sufridos y dejó de incluir las partidas de daños causados por el Huracán María ni emitió un ajuste y pago justo, por lo que no ha podido reparar todos los daños de su propiedad, provocándole angustias mentales. La parte apelante esgrimió que MAPFRE falló en adoptar o implementar métodos para la investigación expedita de su reclamación; rehusó pagar la reclamación justa sin investigar razonablemente a base de la información disponible; no obró de buena fe para realizar un ajuste rápido, justo y equitativo de la reclamación; la obligó a instar la *Demanda* para recobrar las

---

[2] *Íd.*, Anejo I, págs. 1-12.

cuantías adeudadas al amparo de los términos de la póliza, más realizó una oferta sustancialmente menor a la que tenía derecho. Concretizó que las partes nunca acordaron el valor de la propiedad asegurada, por lo que la parte apelada estaba impedida de aplicar un deducible porcentual. Subrayó que la parte apelada actuó de manera dolosa y temeraria, demostrando mala fe contractual, más que, a sabiendas e intencionalmente, MAPFRE hizo falsas representaciones a la parte apelante sobre su cubierta para evitar cumplir con sus obligaciones contractuales sobre el pago de las pérdidas cubiertas por los daños ocasionados por el Huracán María.

Con respecto al término prescriptivo, la parte apelante alegó que el 18 de septiembre de 2018, presentó una *Demanda* por incumplimiento de contrato y daños contractuales contra MAPFRE, la cual, el 16 de septiembre de 2022, fue desestimada sin perjuicio por incumplimiento con el diligenciamiento del emplazamiento. Por todo lo anterior, la parte apelante reclamó una suma de $108,792.89 por daños estructurales y $25,000.00 por concepto de daños morales, así como otras sumas.

El 2 de noviembre de 2023, MAPFRE presentó una *Moción de Desestimación y Sentencia Sumaria*.[3] En esta, le solicitó al TPI que dictara sentencia sumaria y desestimara con perjuicio la *Demanda* en su contra. La parte apelada aseveró que, el 26 de julio de 2018, la parte apelante firmó un *Relevo y Acuerdo de Pago de Reconsideración*, en el que relevó, exoneró y liberó a MAPFRE de cualquier daño, pérdida, causa de acción pasada, presente y futura a consecuencia del Huracán María, quedando entendido que el pago emitido en la reconsideración era total y final con relación a la causa de acción de daños sufridos en su propiedad por el paso del Huracán María. Alegó que, ya que la *Demanda* se realizó los mismos reclamos

---

[3] *Íd.*, Anejo II, págs. 13-71.

exonerados mediante el *Relevo y Acuerdo de Pago de Reconsideración,* dejaba de exponer una reclamación que justificara la concesión de un remedio al amparo de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5). MAPFRE sostuvo que el único asunto que estaba en controversia era si, como cuestión de derecho, procedía la desestimación de la *Demanda,* toda vez que la parte apelante firmó el *Relevo y Acuerdo de Pago de Reconsideración* en el que lo relevó de toda causa de acción relacionada a daños causado por el Huracán María en su propiedad.

En oposición a que se dictara sentencia sumaria en su contra, el 29 de noviembre de 2023, la parte apelante presentó una moción en la que expuso que los siguientes hechos estaban en controversia:[4]

1. El ajuste y estimado de daños de MAPFRE de $4,712.69, está controvertido ya que la parte demandante alega que los daños ascienden a $108,792.89 y que dicho estimado no fue realizado de manera justa, razonable ni equitativa ni de Buena Fe por lo que existe una controversia real y material sobre hechos esenciales que impiden que el presente caso se disponga por el mecanismo procesal de la sentencia sumaria. [...]
2. El documento titulado "Relevo y Acuerdo de Pago de Reconsideración", además de ser un documento "self-serving", es uno de adhesión y no cumple con la casuística elaborada por nuestros tribunales sobre el conocimiento y alcance de firmar este tipo de documentos por lo que debe dilucidarse en la vista en sus méritos, no mediante sentencia sumaria. La parte demandante como muchos de otros puertorriqueños, ante la posibilidad de no obtener una justa y adecuada compensación, sin conocimiento de causa, se vieron precisados a firmar documentos y relevos preparados por las compañías aseguradora[s] que no tenían otro propósito que salir de las reclamaciones lo antes posible y por la menor compensación posible.

La parte apelante precisó que la mera firma de un acuerdo por pago y relevo no era suficiente para determinar su consentimiento, por lo que comprendió que era necesario celebrar un juicio en sus méritos para dirimir los asuntos en controversia.

---

[4] *Íd.,* Anejo III, págs. 72-145.

Sometido el asunto ante su consideración, el 5 de abril de 2024, el TPI emitió una *Sentencia* en la que declaró Ha Lugar la *Moción de Desestimación y Sentencia Sumaria* presentada por MAPFRE y desestimó con perjuicio la *Demanda* instada por la parte apelante, por lo que ordenó el cierre y archivo del caso.[5] El Foro *a quo* estableció que, teniendo el beneficio de examinar cuidadosamente los escritos presentados por ambas partes, así como los hechos y los documentos consignados, determinó que los siguientes hechos materiales no estaban en controversia:

1. MAPFRE emitió la Póliza de Seguro de Vivienda número 1110751567956, a favor de la Parte Demandante, vigente del 30 de noviembre de 2016 al 30 de noviembre de 2017, para cubrir la propiedad localizada en [...] en Humacao, Puerto Rico, contra tormenta de viento, huracán o granizo, entre otros peligros.

2. La póliza solo contiene la cubierta A-Vivienda por el límite de $106,880, con un deducible de 2% de $2,138 y coaseguro 100%.

3. La Parte Demandante realizó una reclamación a MAPFRE a causa de los daños causados a su propiedad por motivo del paso del huracán María.

4. MAPFRE acusó recibió de la reclamación [d]el 16 de noviembre de 2017, a la que asignó el número 20171286063.

5. De conformidad con la prueba presentada, MAPFRE realizó una inspección de la propiedad el 4 de diciembre de 2017. Del resultado de la investigación, MAPFRE determinó que la cantidad estimada de daños cubiertos fueron $7,102.50, que luego de restar el deducible ($2,137.60) y una cantidad de coaseguro de ($1,491.52), procedía un pago por la suma de $3,473.38.

6. MAPFRE emitió el pago de $3,473.38 mediante el cheque número 1800673, expedido el 10 de enero de 2018, como pago total y final de la reclamación del demandante por concepto de los daños sufridos a consecuencia del huracán María.

7. MAPFRE ajustó la reclamación dentro del término de 90 días que dispone el Código de Seguros.

8. La Parte Demandante presentó ante MAPFRE una primera reconsideración del ajuste realizado, quien determinó que no procedía la reconsideración.

---

[5] *Íd.*, Anejo V, págs. 148-168. Archivada y notificada el 10 de abril de 2024.

9. Posteriormente, la Parte Demandante presentó una segunda reconsideración y la aseguradora realizó una revisión de su ajuste y añadió partidas de daños que resultaron en un nuevo ajuste por la cantidad de $8,671.25. Al restarle el deducible ($2,137.60) y una cantidad de coaseguro de ($1,820.96), MAPFRE determinó que procedía un pago por la suma de $4,712.69. A esta cantidad, se debía restar el pago ya realizado de $3,473.38, por lo que MAPFRE habría de realizar un pago adicional de $1,239.31.

10. Con fecha del 9 de julio de 2018, MAPFRE notificó mediante comunicación escrita la determinación de reconsideración, junto con el ajuste y relevo.

11. MAPFRE también emitió el cheque número 1820132, de fecha del 9 de julio de 2018, a favor de Edgardo Q. Rivera y Firstbank por la cantidad de $1,239.31.

12. El 26 de julio de 2018, el demandante, Edgardo Q. Rivera, firmó el "Relevo y Acuerdo de Pago" que lee como sigue:

En virtud de la RECONSIDERACIÓN presentada por usted, con relación a la reclamación número 20171286063 [a] través de la Póliza identificada con el número 1110751567956 emitida a su nombre, MAPFRE PRAICO INSURANCE COMPANY ("Aseguradora") pagará la suma de $1,239.31 para un pago global sobre su reclamación de $4,712.69. El RECLAMANTE/ASEGURADO releva, exonera y libera para siempre a la Aseguradora, sus empleados, representantes y/o agentes, de cualquier daño, pérdida, perjuicio, y/o causa de acción pasada, presente y/o futura que haya sido, o en adelante pueda ser sostenida por s[í], sus herederos o representantes legales, a consecuencia del Huracán María, ocurrido el pasado 20 de septiembre de 2017. Queda entendido que el pago emitido mediante el presente acuerdo constituye el pago TOTAL Y FINAL por los daños sufridos en la propiedad o propiedades descritas en la póliza de referencia, a consecuencia del paso del huracán María, incluyendo todas y cada una de las cubiertas disponibles bajo la póliza contratada, y/o cualquiera de los riesgos descritos en la misma. De acuerdo con lo anterior, damos por terminada esta reclamación, incluyendo el presente proceso de RECONSIDERACIÓN y cualquier otro procedimiento ulterior o previo relacionado a la misma. En virtud de este acuerdo el RECLAMANTE/ASEGURADO renuncia a cualquier proceso de RECONSIDERACIÓN futuro ante MAPFRE PRAICO Insurance Company o cualquiera de sus representantes, sobre la reclamación de referencia y cualquiera otras relacionada con la propiedad o propiedades, muebles o inmuebles, descritas en la póliza antes mencionada. De ser el presente acuerdo firmado y aceptado por una parte RECLAMANTE/ASEGURADO, éste afirma que está

debida y legalmente autorizado a suscribir el presente RELEVO Y ACUERDO DE PAGO en su representación.

13. El importe de los dos cheques emitidos por MAPFRE fue cobrado por la Parte Demandante.

14. Previo a la presentación de la demanda de autos y con posterioridad a la Reconsideración extrajudicial presentada ante MAPFRE, la Parte Demandante no reclamó partidas adicionales a las que la aseguradora consideró en su ajuste final.

En TPI concluyó que la firma de la parte apelante en el *Relevo y Acuerdo de Pago de Reconsideración* puso de manifiesto que se recibió el pago y la intención de dicha parte en concluir la reclamación, puesto que el aludido documento reflejó de forma clara la intención de MAPFRE de transar la reclamación por el pago total y final. Por ello, el Foro *a quo* consignó que la obligación de MAPFRE para con la parte apelante se extinguió. A juicio del TPI, la parte apelante no presentó evidencia que controvirtiera lo sostenido por la parte apelada mediante evidencia admisible. Además, estableció que la parte apelante no cumplió con las formalidades requeridas por la Regla 36 de Procedimiento Civil, *supra*, R. 36, al no citar específicamente los párrafos que estaban en controversia. Asimismo, el TPI dispuso que la parte apelante, en vez de controvertir los hechos expuestos por MAPFRE, los confirmó. A saber, que la parte apelada le pagó la suma de $4,712.69, más que la parte apelante firmó el *Relevo y Acuerdo de Pago de Reconsideración*, entre otras admisiones. El TPI resolvió que, toda vez que la parte apelante no se opuso correctamente a la solicitud de sentencia sumaria, procedía que se dieran por admitidos los hechos esenciales que MAPFRE alegó en la moción sin que se controvirtieran.

El Foro *a quo* determinó que de la prueba presentada en la solicitud de sentencia sumaria y que no se controvirtió, se desprendió que la parte apelada cumplió con el Código de Seguros,

26 LPRA sec. 101 *et seq.*, los términos y las condiciones de la póliza. Es decir, que el 16 de noviembre de 2017, MAPFRE acusó recibo de la reclamación y realizó una investigación, ajuste y resolución de la reclamación mediante el pago realizado el 10 de enero de 2018, dentro del término de noventa (90) días que disponía el Artículo 27.162 del Código de Seguros, *supra*, sec. 2716b. A su vez, que MAPFRE atendió las reconsideraciones presentadas por la parte apelante y notificó el ajuste final, junto con el *Relevo y Acuerdo de Pago de Reconsideración*, firmado el 26 de julio de 2018 por la parte apelante. El TPI estableció que dicho *Relevo y Acuerdo de Pago de Reconsideración* estableció claramente que exoneraba y liberaba a MAPFRE para siempre de cualquier daño, pérdida, perjuicio y/o causa de acción pasada, presente y/o futura a consecuencia del Huracán María y que el pago otorgado constituía el pago total y final por los daños sufridos en la propiedad. El Foro *a quo* particularizó que, a diferencia del caso *Feliciano Aguayo v. MAPFRE*, 207 DPR 138 (2021), la parte apelante de este caso no presentó declaración jurada alguna que demostrara que existió opresión, ventaja indebida, mala fe o incumplimiento de MAPFRE con alguna práctica desleal del Código de Seguros, *supra*. Puntualizó que, al contrario, la parte apelante únicamente presentó un estimado de daños. Subrayó que una vez las partes resolvieron la reclamación de conformidad con el Artículo 27.162 del Código de Seguros, *supra*, sec. 2716b, no estaba prohibido que la aseguradora firmara el relevo suscrito en este caso, el cual el TPI entendió que era válido.

Inconforme con la determinación del TPI, el 25 de abril de 2024, la parte apelante solicitó reconsideración,[6] la cual, el 26 de abril de 2024, el TPI declaró No Ha Lugar mediante una *Resolución de Reconsideración.*[7]

---

[6] *Íd.*, Anejo VI, págs. 169-187.
[7] *Íd.*, Anejo VII, págs. 188-189. Archivada y notificada el 2 de mayo de 2024.

Aún insatisfecho, el 31 de mayo de 2024, la parte apelante acudió ante este Tribunal y señaló que el TPI incidió en cometer los siguientes errores:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR SUMARIAMENTE LA DEMANDA CUANDO MAPFRE NO CUMPLIÓ CABALMENTE CON LOS REQUERIMIENTOS DE LA REGLA 36 DE LAS DE PROCEDIMIENTO CIVIL NI PROCEDÍA EN DERECHO[.]**
>
> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR SUMARIAMENTE LA DEMANDA AL NO HABERSE CONFIGURADO LOS ELEMENTOS NECESARIOS PARA APLICAR LA FIGURA DE PAGO EN FINIQUITO Y PERSISTIR HECHOS MATERIALES Y ESENCIALES EN CONTROVERSIA[.]**

En atención a los errores señalados por la parte apelante, procedemos a exponer la normativa jurídica aplicable a este recurso.

## II.

### A. Sentencia sumaria

El mecanismo procesal de sentencia sumaria está regulado por la Regla 36 de Procedimiento Civil, *supra*, R. 36. Su propósito es la solución justa, rápida y económica de los litigios civiles en los que no existe controversia genuina de hechos materiales y se puede prescindir de la celebración de un juicio plenario dado que resta aplicar el Derecho. *Ferrer et al. v. PRTC*, 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Roth v. Lugo*, 87 DPR 380, 392 (1963). Los hechos materiales se definen como "aquellos hechos que pueden afectar el resultado de la reclamación bajo el derecho sustantivo aplicable". *Ferrer et al. v. PRTC*, 209 DPR 574, *supra*, pág. 581. Además, la controversia sobre los hechos materiales debe ser real. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Es decir:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la

dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. *Íd.*, en las págs. 213-214, *citando a* P.E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (2) Rev. Forum, 8 (1987).

La parte promovente de la sentencia sumaria debe demostrar con claridad su derecho y la inexistencia de una controversia sustancial sobre algún hecho material para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o parte del pleito. *Íd.*, pág. 213; *Véase* Regla 36.3 de Procedimiento Civil, *supra*. Ahora bien, la parte promovente no puede descansar en meras alegaciones, dado que debe presentar evidencia al tribunal que acredite la inexistencia de controversia sobre los hechos materiales. R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. Lexis Nexis, 2017, pág. 315; *SLG Fernández-Bernal v. RAD-MAN*, 208 DPR 310, 335-336 (2015); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 136 (2015). Dicha prueba debe ser admisible en evidencia y puede incluir certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas, prueba oral, entre otros. R. Hernández Colón, *op. cit.*, pág. 318.

Por otro lado, la parte promovida debe controvertir la prueba presentada por la parte promovente, demostrando los hechos que están en controversia. *Ramos Pérez v. Univisión*, *supra*, en la pág. 215; *León Torres v. Rivera Lebrón*, 204 DPR 20, 44 (2020). **Importante es que la parte promovida tampoco puede descansar en meras alegaciones de sus escritos judiciales, dado que debe presentar contradeclaraciones juradas y contradocumentos que**

**controviertan los hechos presentados por la parte promovente.**
*Ramos Pérez v. Univisión, supra; Jusino et als. v. Walgreens,* 155
DPR 560, 577 (2000); *Corp. Presiding Bishop CJC of LDS v. Purcell,*
117 DPR 714, 721 (1986) (Énfasis nuestro). Pues "**viene obligada a
contestar de forma detallada y específica aquellos hechos
pertinentes para demostrar que existe una controversia real y
sustancial que debe dilucidarse en juicio**". *Ramos Pérez v.
Univisión, supra.* (Énfasis nuestro). Asimismo, "es necesario
demostrar afirmativamente que se cuenta con evidencia aceptable,
admisible y suficiente para ser presentada en juicio". *Jusino et als.
v. Walgreens, supra,* págs. 577-578. Al momento de oponerse a que
el tribunal dicte sentencia sumariamente, la Regla 36.3 de
Procedimiento Civil, *supra,* R. 36.3, le impone tres (3) exigencias a
la parte promovida, siendo estas:

> [...] una relación concisa y organizada, con una
> referencia a los párrafos enumerados por la parte
> promovente, de los hechos esenciales y pertinentes que
> están realmente y de buena fe controvertidos, con
> indicación de los párrafos o las páginas de las
> declaraciones juradas u otra prueba admisible en
> evidencia donde se establecen estos hechos, así como
> de cualquier otro documento admisible en evidencia que
> se encuentre en el expediente del tribunal;

> [...] una enumeración de los hechos que no están en
> controversia, con indicación de los párrafos o las
> páginas de las declaraciones juradas u otra prueba
> admisible en evidencia donde se establecen estos
> hechos, así como de cualquier otro documento
> admisible en evidencia que se encuentre en el
> expediente del tribunal;

> [...] las razones por las cuales no debe ser dictada la
> sentencia, argumentando el derecho aplicable.

Si la parte promovida no cumple en controvertir los hechos
materiales que están en disputa y la moción procede como cuestión
de derecho, el tribunal podrá resolver en su contra. R. Hernández
Colón, *op. cit.,* pág. 320; Regla 36.3 (c) de Procedimiento Civil, *supra,*
R. 36.3. No obstante, la falta de oposición no es significativo de que
proceda dictar sentencia sumaria automáticamente, si el tribunal

no tiene ante sí la verdad sobre todos los hechos materiales. *Ramos Pérez v. Univisión, supra; SLG Fernández-Bernal v. RAD-MAN, supra,* pág. 337; *Jusino et als. v. Walgreens, supra,* pág. 578; *Corp. Presiding Bishop CJC of LDS v. Purcell, supra.* La existencia de controversia sobre hechos materiales debe resolverse a favor de la parte promovida. *SLG Fernández-Bernal v. RAD-MAN, supra,* pág. 336; *Meléndez González et al. v. M. Cuebas, supra,* pág. 138. Puesto que, en esencia, "[s]iendo la sentencia sumaria un remedio discrecional, el principio rector para su utilización es el sabio discernimiento del juzgador, ya que, mal utilizada, puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley". *Jusino et als. v. Walgreens, supra.*

Es norma trillada que los tribunales apelativos nos encontramos en la misma posición que el Foro Primario para evaluar la procedencia de una sentencia sumaria. *SLG Fernández-Bernal v. RAD-MAN, supra,* pág. 337; *Meléndez González et al. v. M. Cuebas, supra,* pág. 115; *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2015); *González Santiago v. Baxter Healthcare, supra.* Como foro apelativo, venimos obligados a examinar *de novo* el expediente y verificar que las partes cumplieron con las exigencias de la Regla 36.3 de Procedimiento Civil, *supra. SLG Fernández-Bernal v. RAD-MAN, supra,* pág. 338; *Rivera Matos et al. v. Triple-S et al., supra.* Importante es que en este ejercicio, no consideraremos nuevos asuntos que no fueron presentados oportunamente ante el tribunal de instancia ni nuevas teorías esbozadas por los litigantes. Véase *González Meléndez v. Mun. San Juan,* 212 DPR 601, 611 (2023); *Vera v. Dr. Bravo,* 161 DPR 308, 335 (2004); *Ortiz Torres v. K&A Developers, Inc.,* 136 DPR 192, 202 (1994). El máximo foro judicial delimitó nuestra intervención a los siguientes aspectos:

> **Primero**, [...] el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia

Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

**Segundo**, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y discutidos en *SLG Zapata-Rivera v. JF Montalvo,* supra.

**Tercero**, [...] el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, **el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos**. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto**, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Meléndez González et al. v. M. Cuebas, supra,* en las págs. 118-119.

Por último, de encontrar que los hechos materiales realmente están incontrovertidos, procede revisar *de novo* si se aplicó correctamente el Derecho. *SLG Fernández-Bernal v. RAD-MAN, supra.* Por otro lado, "los foros apelativos debemos otorgar gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia". *Íd.* Sin embargo, nos corresponde

intervenir con las determinaciones de hecho cuando medie error manifiesto, pasión, prejuicio o parcialidad y abuso de discreción. *Íd.*

En lo atinente a las controversias sobre incumplimiento de contrato, para que la parte demandante prevalezca por la vía sumaria, debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción, a saber, "existencia de los daños alegados, el incumplimiento culposo o doloso de la obligación contractual y la relación causal entre el incumplimiento y los daños". *Ferrer et al. v. PRTC, supra,* pág. 581.

## B. <u>Contratos</u>

Por otro lado, a tenor con el Artículo 1042 del Código Civil de 1930,[8] 31 LPRA sec. 2992, son fuentes de las obligaciones: la ley, los contratos, los cuasicontratos y los actos y las omisiones ilícitas o en que intervenga cualquier género de culpa o negligencia. En lo que nos concierne, el Artículo 1230 del Código Civil, *supra,* sec. 9751, dispone que un contrato es un "negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones." Dichas obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes. *Véase* Art. 1044 del Código Civil, *supra,* sec. 2994.

Un contrato se perfecciona por el mero consentimiento, mediante el cual las partes se obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley. *Véase* Art. 1210 del Código Civil, *supra,* sec. 3375. "El consentimiento se manifiesta por el concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato." Art. 1214 del Código Civil, *supra,* sec. 3401. Ahora bien, dicho consentimiento

---

[8] Dado que los hechos de este caso se suscitaron durante la vigencia del Código Civil de 1930, derogado por virtud del Código Civil de 2020, aplicará el antiguo estatuto.

será nulo cuando se prestó mediando error, violencia, intimidación o dolo. Véase Art. 1217 del Código Civil, *supra*, sec. 3404. Existe dolo cuando uno de los contratantes ejerce palabras o maquinaciones insidiosas para inducir al otro a celebrar un contrato que, sin ellas, no hubiera hecho. *Véase* Art. 1221 del Código Civil, *supra*, sec. 3408. Solamente el dolo grave produce la nulidad del contrato, pero no debe haber sido empleado por ambas partes contratantes. *Véase* Art. 1222 del Código Civil, *supra*, sec. 3409. Importante es que:

> El dolo se entiende como todo un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena, generalmente para beneficio propio, en que viene a resumirse el estado de ánimo de aquel que no sólo ha querido el acto, sino que, además, ha previsto y querido las consecuencias antijurídicas de él provenientes. [...] Es la voluntad consciente de producir un acto injusto. *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659, 666 (1999).

## C. <u>Contrato de seguros</u>

Es norma conocida que los contratos de seguros están revestidos de un alto interés público por su importancia, complejidad y efecto en la economía y sociedad, por lo que es una industria extensamente regulada mediante el Código de Seguros de Puerto Rico, *supra*. *Con. Titi. Acquamarina et al. v. Triple-S*, 210 DPR 344, 355-356 (2022); *Consejo Titulares v. MAPFRE*, 208 DPR 761, 773 (2022); *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 896 (2012). El Artículo 1.020 del Código de Seguros, *supra*, sec. 102, define el seguro como "el contrato mediante el cual una persona se obliga a indemnizar a otra a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso previsto en el mismo". A saber, el contrato de seguro permite que, en la eventualidad de ocurrir un suceso incierto previsto por la póliza, la persona o el negocio asegurado proteja sus bienes y obligaciones al transferir el riesgo o la pérdida acordada a cambio del pago de una

prima. *Con. Titi. Acquamarina et al. v. Triple-S, supra*, pág. 356; *Consejo Titulares v. MAPFRE, supra*, pág. 774.

El Capítulo 27 del Código de Seguros regula lo atinente a las prácticas en el negocio de seguros que constituyen actos desleales o engañosos. *Consejo Titulares v. MAPFRE, supra*. Como parte de las prácticas desleales, se encuentran las relacionadas con el ajuste de reclamaciones. *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 632 (2009). El Artículo 27.162 del Código de Seguros, *supra*, sec. 2716b, establece que "[l]a investigación, ajuste y resolución de cualquier reclamación se hará en el período razonablemente más corto dentro de noventa (90) días después de haberse sometido al asegurador la reclamación". Durante dicho período, la aseguradora debe realizar una investigación diligente que incluye: (1) determinar si el evento damnificador ocurrió durante la vigencia de la póliza; (2) determinar si la parte asegurada tenía un interés asegurable; (3) determinar si la propiedad damnificada es la descrita en las declaraciones; (4) confirmar si las pérdidas reclamadas no están sujetas a exclusiones de riesgo, e (5) investigar si el daño fue causado por negligencia de un tercero para subrogarse en los derechos de resarcimiento de la parte asegurada. *Íd.*, pág. 634. Importante es que "al analizar una reclamación, los aseguradores tienen una obligación de llevar a cabo un ajuste rápido, justo, equitativo y de buena fe". *Íd.*, pág. 635. Tras evaluar dichos elementos para llegar a cabo un ajuste equitativo y razonable, la aseguradora está en posición de resolver la reclamación de forma final de cualquiera de las siguientes maneras:

> (1) El pago total de la reclamación.

> (2) La denegación escrita y debidamente fundamentada de la reclamación.

> (3) El cierre de la reclamación por inactividad del reclamante, cuando el reclamante no coopere o no entregue la información necesaria para que el asegurador pueda ajustar la reclamación. Disponiéndose que el asegurador notificará inmediatamente al reclamante del cierre de la misma,

salvo que en tales circunstancias el cierre será sin perjuicio de permitir nuevamente la presentación de dicha reclamación. Art. 27.163 del Código de Seguros, *supra*, sec. 2716c.

La aseguradora igualmente puede cumplir con su obligación mediante el envío de una oferta razonable a la parte asegurada, constituyendo el estimado de la aseguradora por los daños sufridos. *Carpets & Rugs v. Tropical Reps, supra*. Dicha postura de la aseguradora se trata de un informe objetivo en cuanto a la procedencia de la reclamación y la existencia de cubierta bajo la póliza, por lo que no es una concesión de la aseguradora. *Íd*. Dicha comunicación debe emitirse dentro del término máximo de noventa (90) días desde que se presentó la reclamación. *Íd.*, pág. 636. Por otro lado, la oferta razonable como base de negociación no impide que las partes consideren llegar a un acuerdo de transacción de la reclamación. *Íd*. Ahora bien, "[l]as posibilidades de transacción entre [el] asegurador y [el] asegurado sólo estarán limitadas por lo que en su día el asegurador informó como procedente en su comunicación o postura inicial." *Íd*. No obstante a ello, "el asegurado podría renunciar a ciertas partidas a cambio de que el asegurador acepte otras que inicialmente estimó improcedentes o se modifiquen sumas de las ofrecidas originalmente. Lo que de forma alguna es permisible es que un asegurador, ante un reclamo judicial de su asegurado, deniegue partidas que en su ajuste inicial entendió procedentes, en ausencia de fraude u otras circunstancias extraordinarias que lo ameriten". *Íd.*

Entre las prácticas desleales en el ajuste de reclamaciones, según dispone el Código de Seguros, *supra*, se encuentras las siguientes:

(1)  Hacer falsas representaciones de los hechos o de los términos de una póliza, relacionados con una cubierta en controversia.

(2)  Dejar de acusar recibo y no actuar con razonable diligencia dentro de los noventa (90) días, luego de

radicada y notificada una reclamación bajo los términos de una póliza.

(3) Dejar de adoptar e implementar métodos razonables para la rápida investigación de las reclamaciones que surjan bajo los términos de una póliza.

(4) Rehusar pagar una reclamación sin llevar a cabo una investigación razonable basada en la información disponible.

(5) Rehusar confirmar o denegar cubierta de una reclamación dentro de un término razonable luego de haberse completado la declaración de pérdida.

(6) No intentar de buena fe de llevar a cabo un ajuste rápido, justo y equitativo de una reclamación de la cual surja claramente la responsabilidad.

(7) Obligar a los asegurados o reclamantes a entablar pleitos para recobrar bajo los términos de una póliza, porque se le ha ofrecido al asegurado o reclamante una cantidad sustancialmente menor que la cantidad que podría ser recobrada finalmente en un litigio o porque se le ha negado incorrectamente la cubierta bajo los términos de la póliza.

(8) Tratar de transigir una reclamación por una cantidad menor que la que el asegurado o reclamante razonablemente tenga derecho, basado en la literatura o material impreso que se le acompañó o se hizo formar parte de la solicitud.

(9) Intentar transigir una reclamación basada en una solicitud alterada sin el consentimiento o conocimiento del asegurado.

(10) Realizar los pagos de las reclamaciones a los asegurados o beneficiarios sin acompañarlos de una declaración que establezca la cubierta bajo la cual se realiza el pago.

(11) Hacer creer a los asegurados o reclamantes de la práctica de apelar de un laudo de arbitraje recaído a favor del reclamante o asegurado, con el fin de obligarlos a aceptar una transacción o ajuste menor que la cantidad concedida por el árbitro.

(12) Rehusar transigir rápidamente una reclamación cuando clara y razonablemente surge la responsabilidad bajo una porción de la cubierta, con el fin de inducir a una transacción bajo otra porción de la cubierta de la póliza.

(13) Negarse a ofrecer una explicación razonable de los términos de una póliza en relación con los hechos y la ley aplicable, para la denegación de una reclamación o de una oferta de transacción.

(14) Retardar una investigación o el pago de una reclamación al requerirle al asegurado, reclamante o

a su médico, que sometan un informe preliminar de reclamación y luego requerirles una declaración formal de pérdida, la cual contiene sustancialmente la misma información del informe preliminar.

(15) Negar la existencia de la cubierta de una póliza cuando el asegurado rechazó la oferta de pago de una reclamación de esa cubierta.

(16) Negar el pago de una reclamación válida sólo por la mera sospecha que se cometió fraude o hubo falsas representaciones de hecho.

(17) Negar el pago de una reclamación bajo el pretexto de información insuficiente cuando ésta era capaz de ser obtenida bajo métodos ordinarios de investigación.

(18) Reservado.

(19) Requerir que el asegurado o reclamante firme un relevo que pueda ser interpretado como que releva al asegurador de aquellas obligaciones contractuales que no fueron objeto de la transacción.

(20) Requerir condiciones irrazonables al asegurado o reclamante para realizar el ajuste de la reclamación o dilatar el mismo.

(21) Ninguna compañía de seguros, en el ajuste de reclamación de daños a propiedad de terceros, aplicará una reducción por depreciación al costo de las piezas necesarias para la reparación del vehículo de motor de la parte perjudicada en un accidente de tránsito, cuando las mismas no puedan ser reparadas o sustituidas por otras de clase y calidad similar y el valor correspondiente del reemplazo no exceda el límite de cubierta. En ningún caso, se aplicará reducción por depreciación a los costos de la labor de reparación e instalación relacionada. Art. 27.161 del Código de Seguros, *supra*, sec. 2716a.

Como consecuencia del paso del Huracán María en Puerto Rico, el Comisionado de Seguros, encargado de velar, fiscalizar y reglamentar el cumplimiento con las disposiciones del Código de Seguros, *supra*, emitió la Carta Circular de 2 de octubre de 2017, Núm. CC-2017-1911D. *Véase Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 153 (2021). En la misma, dispone lo siguiente:

Ante el estado de emergencia y pérdidas sufridas a raíz del embate del Huracán María por nuestra Isla y con el propósito de velar por el interés público que venimos llamados a proteger, debemos ser enfáticos y recordarles el cumplimiento estricto de las disposiciones del Código de Seguros y su Reglamento, especialmente aquellas disposiciones del Capítulo 27

del Código relacionadas con las prácticas prohibidas y los métodos razonables para la investigación y ajuste de las reclamaciones. A modo de recordatorio, algunos de los conceptos establecidos en el Código de Seguros y su Reglamento con los cuales todo asegurador debe cumplir en la investigación y ajuste de reclamaciones son:

1. Proveer a los reclamantes de forma expédita los formularios de reclamación.

2. Acusar recibo, confirmar o denegar cubierta e investigar, ajustar y resolver una reclamación en el periodo razonablemente más corto.

3. Proveer a los reclamantes una adecuada orientación y asistencia clara y precisa, manteniendo la comunicación de una manera cortés y servicial.

4. Hacer manifestaciones y representaciones ciertas y correctas sobre los hechos y los términos de una póliza y ofrecer explicaciones razonables para la denegación de una reclamación u oferta de transacción.

5. Llevar a cabo una investigación razonable basada en la información disponible y realizar el ajuste rápido, justo y equitativo de una reclamación.

6. Ofrecer al reclamante aquellas cantidades que dentro de los términos de la póliza sean justas y razonables, y sobre las cuales el reclamante razonablemente tenga derecho, sin tratar de transigir la reclamación por una cantidad irrazonablemente menor a la que se tiene derecho.

7. No transigir una reclamación sin el consentimiento o conocimiento del asegurado.

8. No obligar a los reclamantes a entablar pleitos para recobrar bajo la póliza porque se le ha ofrecido una cantidad sustancialmente menor a la que tiene derecho o porque se le ha negado incorrectamente la cubierta.

9. No requerir condiciones irrazonables para realizar el ajuste o dilatar el mismo o negarse a pagar una reclamación bajo pretexto de información insuficiente, cuando la información se podía obtener bajo métodos ordinarios de investigación.

10. Cuando se requiera la firma de un relevo, que el mismo no pueda ser interpretado como que se releva de aquellas obligaciones que no fueron objeto de la transacción.

11. Acompañar los pagos de las reclamaciones de una declaración que establezca la cubierta bajo la cual se realiza el pago e incluya todas las cantidades que deban ser incluidas de acuerdo con la reclamación y los límites de la cubierta.

Es sumamente importante que se tomen todas las medidas necesarias para agilizar la resolución de todas las reclamaciones que se les presenten.

Se requiere el estricto cumplimiento con la presente Carta Circular.

Estas prácticas por la alegada mala fe por parte de la aseguradora en el proceso de reclamación pueden exponer a dicha parte a sanciones y penalidades, así como otras consecuencias por incumplimiento de contrato, de incurrir en dolo, negligencia o morosidad en el cumplimiento de sus obligaciones. *Consejo Titulares v. MAPFRE, supra,* págs. 775-776. A tenor con el Artículo 27.164 del Código de Seguros, *supra,* sec. 2716d, cualquier persona que haya sufrido una de las prácticas desleales expuestas en el Artículo 27.161 del Código de Seguros, *supra,* sec. 2716a, tendrá la opción de incoar una acción civil contra la aseguradora.

### D. Transacción

En otro extremo, la transacción se conoce como "un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado". Art. 1709 del Código Civil, *supra,* sec. 4821. Los elementos constitutivos de un contrato de transacción son: (1) que exista una relación jurídica incierta y litigiosa; (2) que las partes contratantes tengan la intención de componer el litigio y sustituir la relación dudosa por una cierta y constatable y (3) que las partes se otorguen concesiones recíprocas. *Feliciano Aguayo v. MAPFRE, supra,* pág. 156. La causa de este tipo de contrato es el litigio y las concesiones recíprocas. *Íd.; Mun. de San Juan v. Prof. Research,* 171 DPR 219, 239 (2007); *López Tristani v. Maldonado,* 168 DPR 838, 857 (2006). Por ello, "[e]s necesario siempre que ambas partes sacrifiquen y concedan al mismo tiempo alguna cosa en función de la superación del litigio sobre la cosa controvertida". *Íd.* No obstante a ello, no se requiere que las prestaciones recíprocas sean

equivalentes o respondan a valores objetivamente equiparables. *Mun. de San Juan v. Prof. Research, supra*, pág. 240.

El Artículo 1715 del Código Civil, *supra,* sec. 4827, dispone que, para las partes, la transacción tiene la autoridad de cosa juzgada. Ahora bien, la transacción en la que intervenga error, dolo, violencia o falsedad de documentos, está sujeta a la nulidad del consentimiento. Véase Art. 1217 del Código Civil, *supra*, sec. 3404; Art. 1716 del Código Civil, *supra*, sec. 4828.

En *Carpets & Rugs v. Tropical Reps, supra*, el Tribunal Supremo estableció que no constituye una transacción cuando la aseguradora emite una carta al asegurado como parte de su obligación, al amparo del Código de Seguros, *supra*, puesto que no constituye un acto voluntario en la negociación para sustituir la incertidumbre jurídica o evitar el inicio de un pleito. Véase *Feliciano Aguayo v. MAPFRE, supra,* pág. 165. Por ello, ya que "tal ofrecimiento no es producto de alguna diferencia en las respectivas pretensiones de asegurador y asegurado (iliquidez de la deuda), no cumple con el requisito de la doctrina de pago en finiquito, esto es, la existencia de una reclamación ilíquida o sobre la cual exista una controversia *bona fide. Íd.* Sin embargo, "el Código de Seguros [*supra,*] no excluye la aplicación de la figura de pago en finiquito en las reclamaciones de seguros." *Bonnelly Sagrado et al. v. United Surety,* 207 DPR 715, 726 (2021) (Pabón Charneco, opinión disidente). Para que dicha figura sea aplicable, es necesario que se cumplan con todos los requisitos jurisprudenciales, además de las disposiciones del Código de Seguros, *supra*, así como otros estatutos. *Feliciano Aguayo v. MAPFRE, supra*, pág. 173. Pues, tal como concluyó el Tribunal Supremo:

> **Nada impide que en la relación aseguradora-asegurado ambas partes lleguen a un acuerdo y transen sus disputas. Tampoco hay impedimento en la utilización del mecanismo de sentencia sumaria si se dan los requisitos. Sin embargo, la evaluación *a***

***posteriori* de estos alegados acuerdos en el contexto de una solicitud de sentencia sumaria y en el marco de un campo altamente regulado como la industria de seguros, precisa de nuestros tribunales la profundidad en el análisis y la certeza de que se ha cumplido con cada uno de los requisitos que las leyes aplicables y la jurisprudencia interpretativa ha establecido. El asunto no se puede analizar de forma tan simple y mecánica.** *Íd.* (Énfasis nuestro).

### E. Pago en finiquito

El pago en finiquito es una de las formas de extinguir las obligaciones. *Íd.*, pág. 159. Para que esta figura opere, debe (1) existir una reclamación ilíquida o sobre la cual existe una controversia *bona fide*; (2) un ofrecimiento de pago por la parte deudora, y (3) una aceptación del ofrecimiento por la parte acreedora. *Íd.*, págs. 159-160. Asimismo, se requiere ausencia de opresión o ventaja indebida por parte del deudor sobre la parte acreedora. *Íd.*, pág. 160. Importante es que la deuda es ilíquida e incierta hasta que las partes acuerden fijar su valor, puesto que el estimado de la aseguradora no convierte la deuda líquida. *Bonnelly Sagrado et al. v. United Surety, supra* (Pabón Charneco, opinión disidente). Por otro lado, el ofrecimiento de pago debe ser de buena fe e indicar mediante declaraciones o actos que el pago ofrecido es en pago total, completo y definitivo de la deuda existente entre ambos. *Íd.*, pág. 163; *HR Elec., Inc. v. Rodríguez*, 114 DPR 236, 240-242 (1983). Sobre el particular, es norma trillada que "la renuncia de un derecho afirmativamente concedido por ley requiere que la parte renunciante conozca de forma cabal su derecho y haya tenido la intención clara de abandonarlo". *Feliciano Aguayo v. MAPFRE, supra*, pág. 173; *Mendoza Aldarondo v. Asociación Empleados*, 94 DPR 564, 577 (1967). Además, "la aceptación del ofrecimiento se perfecciona cuando el acreedor retiene el cheque y consiente bajo la premisa de que el instrumento fue remitido en concepto de pago y saldo total de la obligación". *Feliciano Aguayo v. MAPFRE, supra*, pág. 163. Pero, que la aseguradora envíe una carta conjunto con un

cheque a la parte asegurada para que lo firme y lo cambie no representa por sí solo que se concretó la figura del pago en finiquito ni el saldo de la deuda ni la extinción de la obligación. *Íd.*, pág. 171. Sin embargo, para que la retención del cheque constituya una aceptación no puede haber presión o indebida ventaja de parte del deudor". *Íd.*, pág. 163.

A la luz de la normativa jurídica antes pormenorizada, procedemos a resolver la controversia planteada ante nos.

**III.**

En el presente caso, la parte apelante planteó que el TPI incidió en desestimar la *Demanda* mediante sentencia sumaria. Como primer fundamento, señaló que la parte apelada incumplió con los requisitos de la Regla 36 de Procedimiento Civil, *supra*, R. 36. Como segundo señalamiento, entendió que no se configuraron los elementos necesarios para aplicar la figura de pago en finiquito.

En apoyo a su contención, la parte apelante esgrimió que los documentos presentados por MAPFRE, conjunto con la solicitud de sentencia sumaria, estaban relacionados con el proceso de ajuste y reconsideración de la reclamación de los asegurados, no a un proceso de negociación, por lo que no era indicativo de una oferta de transacción. Además, expuso que la normativa jurídica vigente rechaza disponer de una reclamación en contra de una aseguradora meramente porque el reclamante firmó un relevo. Precisó que la oferta de MAPFRE no se emitió de buena fe, dado que no fue el resultado de un ajuste justo, razonable ni equitativo, comparado con el estimado de daños sometido por la parte apelante, por lo que no procedía dictar sentencia sumariamente. Asimismo, apuntó que el TPI no consideró que las aseguradoras tienen la obligación de emitir una oferta real y completa, más que están impedidas de ofrecer una cantidad sustancialmente menor a la que la parte asegurada tiene derecho. La parte apelante aseguró que MAPFRE envió por correo

una comunicación que incluía un relevo que sujetó el pago de la cuantía adicional que le correspondía. Planteó que MAPFRE actuó deslealmente, en contravención con el Código de Seguros, *supra*, y la *Regla XLVII de Prácticas Desleales en el Ajuste de Reclamaciones*, Reglamento Núm. 2080, Departamento de Estado, 6 de abril de 1976, al tratar de transigir y pagar una cantidad inferior por una reclamación potencialmente mayor, al requerir la renuncia de derechos, y al obligar a la parte apelante a recurrir a los tribunales al no aceptar el pago inferior. Por ello, arguyó que la parte apelada no estableció su cumplimiento *bona fide* con sus obligaciones y deberes en el proceso de ajuste de la reclamación y al emitir su oferta de pago. Por otro lado, la parte apelante adujo que la parte apelada actuó mediando dolo, ya que ninguna de las comunicaciones dirigidas a la parte asegurada le proveyó orientación adecuada sobre sus derechos y al ocultarle que tenía derecho a solicitar otras reconsideraciones. Nos esbozó que persistían las siguientes controversias:

1. Si la aseguradora cumplió con las obligaciones que le impone el Código de Seguros, considerando si llevó a cabo alguna práctica desleal, según allí definidas.
2. Cónsono con lo anterior, si la aseguradora cumplió el deber de realizar una investigación e inspección adecuada de la propiedad, y una evaluación *bona fide* en cuanto a los daños reclamados bajo el contrato de seguro entre las partes.
3. El valor total de las pérdidas sufridas por la Parte Demandante y la procedencia de pagos adicionales.
4. La buena fe de la aseguradora en el cumplimiento de sus obligaciones contractuales y de sus deberes bajo el Código de Seguros y su Reglamento.
5. Si la aseguradora hizo un ajuste rápido, justo, equitativo y de buena fe.

En consecuencia, la parte apelante nos solicitó declarar Ha Lugar el presente recurso y revocar la *Sentencia* aquí apelada.

Por su parte, con respecto al primer error señalamiento de error, la parte apelada esgrimió que fue la parte apelante quien incumplió con las formalidades requeridas por la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3, en vista de que no citó

específicamente los párrafos según enumerados en la solicitud de desestimación ni detalló la evidencia admisible que contenía su impugnación con cita a la página o sección pertinente. En lo atinente al segundo señalamiento de error, de entrada, la parte apelada nos argumentó que bajo ninguna circunstancia reclamó que en este caso se concretizaron los elementos de la figura de pago en finiquito. En cambio, sostuvo que la controversia se trata sobre si los acuerdos de pago, relevos o acuerdos de transacción están prohibidos en el Código de Seguros, *supra*, y si las obligaciones que nacen de un contrato no tienen fuerza de ley entre las partes contratantes y deben cumplirse. Esto, al entender que el *Relevo y Acuerdo de Pago de Reconsideración* tuvo fuerza de ley entre las partes contratantes y debía cumplirse a tenor con lo pactado. Planteó que el caso de autos versa sobre un acuerdo escrito alcanzado entre las partes con su correspondiente relevo que provocó un pago total y final realizado luego de que la parte apelante presentara una segunda reconsideración que fue atendida por MAPFRE en cuanto a los daños que sufrió su propiedad, de conformidad con el Artículo 27.163 del Código de Seguros, *supra*, sec. 2716c y la Regla Núm. 47-A, *Normas para Regular el Término para la Resolución de la Primera Solicitud de Reconsideración de la Determinación del Asegurador sobre una Reclamación*, Reglamento Núm. 8386, Departamento de Estado, 21 de agosto de 2013. MAPFRE manifestó que no obró de mala fe al recibir, evaluar, resolver la reclamación y las dos (2) reconsideraciones de la parte apelante. Por lo anterior, nos solicitó que confirmemos la determinación apelada, desestimemos la presente causa de acción con perjuicio, e impongamos a la parte apelante el pago de una suma razonable por concepto de gastos, costas y honorarios de abogados.

Evaluados los planteamientos de ambas partes, nos encontramos en posición para resolver. Como cuestión de umbral,

nos corresponde realizar el análisis de revisión correspondiente a la sentencia sumaria. Luego de examinar *de novo* la moción en solicitud de sentencia sumaria, su oposición, así como los documentos acompañados para las referidas mociones ante el TPI, concebimos que surge indubitablemente que tanto MAPFRE como la parte apelante incumplieron con los requisitos de la Regla 36 de Procedimiento Civil, *supra*, R. 36. A saber, la parte apelada no indicó claramente las páginas de las declaraciones juradas u otra prueba admisible en evidencia en la que se estableciera cada uno de los hechos que adujo ser esenciales y pertinentes sobre los cuales no existía controversia sustancial, particularmente en los párrafos 2, 3, 4, 5 y 7. Por otro lado, la parte apelante no rebatió de forma específica y detallada con prueba documental ninguno de los hechos materiales que presentó la parte apelada en su petición. Aun así, el incumplimiento de ambas partes no es óbice para denegar que se dicte sentencia sumaria, pero resulta importante destacar que las meras alegaciones no constituyen prueba suficiente para controvertir los hechos materiales aducidos por MAPFRE como incontrovertibles.

Ahora bien, aun con el incumplimiento de las partes, a esta Curia apelativa nos corresponde revisar si en realidad existen hechos materiales en controversia. En tal ejercicio, concluimos que los hechos materiales de este caso realmente estaban incontrovertidos. Así las cosas, procedemos a revisar *de novo* si el Foro *a quo* aplicó correctamente el Derecho a la controversia que tenía ante sí. El TPI concluyó que en este caso hubo una solicitud de reconsideración que fue considerada por la parte apelada, quien emitió un pago adicional al originalmente otorgado y que la parte apelante firmó un relevo. Consignó que nada en el Código de Seguros, *supra*, prohíbe que las aseguradoras firmen relevo una vez se resuelva una reclamación a tenor con el Artículo 27.162 del

Código de Seguros, *supra*, sec. 2716b. Es decir, que la investigación, el ajuste y la resolución se emita dentro de un período dentro de noventa (90) días después de haberse sometido al asegurador la reclamación. Asimismo, el TPI determinó que el relevo firmado por la parte apelante era válido, máxime cuando la parte apelante lo firmó. Expresó que lo prohibido era suscribir un documento que relevara a MAPFRE de aquellas obligaciones contractuales que no fueron objeto de la transacción. El Foro *a quo* resolvió que la parte apelante no demostró que la aceptación del pago fue bajo opresión o indebida ventaja por parte de MAPFRE, ni derrotó la presunción de buena fe de la aseguradora en su ajuste o que actuó mediando alguna práctica desleal.

Tras un análisis sosegado de los documentos que componen el expediente ante nuestra consideración, concluimos que no erró el TPI al dictar sentencia sumaria en contra de la parte apelante. En primer lugar, resulta necesario recordar que la industria de seguros está revestida de un alto interés público, razón por la cual es extensamente regulada mediante el Código de Seguros, *supra*. Ahora bien, en segundo lugar, ninguna disposición del referido Código de Seguros, *supra*, excluye que las partes lleguen a un acuerdo y transen sus disputas. Véase *Feliciano Aguayo v. MAPFRE, supra*, pág. 173. Esto, siempre y cuando los tribunales ejerzamos un análisis profundo de los acuerdos alcanzados entre la aseguradora y la parte asegurada y tengamos la certeza del cumplimiento con los requisitos de ley y de la jurisprudencia interpretativa. *Íd.*

En el caso de marras, tras su propiedad sufrir daños por el paso del Huracán María, el 16 de noviembre de 2017, la parte apelante realizó una reclamación a MAPFRE, a tenor con la Póliza de Seguro de Vivienda número 1110751567956, vigente del 30 de noviembre de 2016 al 30 de noviembre de 2017. Dicha póliza solo contiene la cubierta A-Vivienda por el límite de $106,880, con un

deducible de 2% de $2,138 y un coaseguro 100%. En igual fecha a realizarse la reclamación, la parte apelada emitió un *Acuse de Recibo de su Reclamación,* asignándole el número de reclamación 20171286063. Posteriormente, el 4 de diciembre de 2017, MAPFRE inspeccionó la propiedad y, como resultado de la investigación, estimó que los daños cubiertos sufridos fueron $7,102.50, de los cuales se debía descontar el deducible de $2,137.60 y el coaseguro de $1,491.52, determinando que se debía pagar la suma de $3,473.38. El 10 de enero de 2018, MAPFRE emitió el pago de $3,473.38 como pago total y final de la reclamación de la parte apelante por concepto de los daños sufridos a consecuencia del Huracán María. Todo el ajuste de la reclamación ocurrió dentro del término de noventa (90) días que dispone el Artículo 27.162 del Código de Seguros, *supra,* sec. 2716b. Inconforme con el ajuste original, la parte apelada presentó una primera reconsideración ante MAPFRE, la cual se determinó que no procedía. Posteriormente, la parte apelante presentó una segunda reconsideración. Mediante esta, la parte apelada revisó su ajuste original y determinó que la partida de daños cubiertos fue de $8,671.25, que al restarle el deducible de $2,137.60, el coaseguro de $1,820.96, y el pago ya realizado de $3,473.38, culminó en un pago adicional de $1,239.31. Así las cosas, el 9 de julio de 2018, la parte apelada notificó su determinación de reconsideración conjunto con un cheque por la suma de $1,239.31, más el ajuste y el *Relevo y Acuerdo de Pago de Reconsideración.* En dicho relevo, el cual fue firmado por la parte apelante, se acordó lo siguiente que destacamos:

> **El RECLAMANTE/ASEGURADO releva, exonera y libera para siempre a la Aseguradora, sus empleados, representantes y/o agentes, de cualquier daño, pérdida, perjuicio, y/o causa de acción pasada, presente y/o futura que haya sido, o en adelante pueda ser sostenida por s[í], sus herederos o representantes legales, a consecuencia del Huracán María, ocurrido el pasado 20 de septiembre de 2017. Queda entendido que el pago emitido mediante el**

**presente acuerdo constituye el pago TOTAL Y FINAL por los daños sufridos en la propiedad o propiedades descritas en la póliza de referencia, a consecuencia del paso del huracán María, incluyendo todas y cada una de las cubiertas-disponibles bajo la póliza contratada, y/o cualquiera de los riesgos descritos en la misma. De acuerdo con lo anterior, damos por terminada esta reclamación, incluyendo el presente proceso de RECONSIDERACIÓN y cualquier otro procedimiento ulterior o previo relacionado a la misma. En virtud de este acuerdo el RECLAMANTE/ASEGURADO renuncia a cualquier proceso de RECONSIDERACIÓN futuro ante MAPFRE PRAICO Insurance Company o cualquiera de sus representantes, sobre la reclamación de referencia y cualquiera otras relacionada con la propiedad o propiedades, muebles o inmuebles, descritas en la póliza antes mencionada. De ser el presente acuerdo firmado y aceptado por una parte RECLAMANTE/ASEGURADO, éste afirma que está debida y legalmente autorizado a suscribir el presente RELEVO Y ACUERDO DE PAGO en su representación.** (Énfasis nuestro).

La parte apelante firmó y cobró ambos cheques emitidos por MAPFRE. Posterior a ello, no realizó otra reclamación extrajudicial. Así las cosas, tiene razón la parte apelada al establecer que en esta controversia es improcedente la figura de pago en finiquito, puesto que, las partes otorgaron un acuerdo de transacción ante la relación jurídica incierta y potencialmente litigiosa, con el objetivo de sustituir la relación dudosa por una cierta y otorgar concesiones recíprocas. A saber, MAPFRE le otorgó a la parte apelante dos (2) cheques a cambio de que considerara dichos pagos como pago total y final por los daños sufridos por su propiedad como consecuencia del Huracán María y firmara el *Relevo y Acuerdo de Pago de Reconsideración* para relevar, exonerar y liberar a la parte apelada de cualquier reclamación por daños y perjuicios o pérdidas relacionadas al Huracán María. El *Relevo y Acuerdo de Pago de Reconsideración* constituyó un contrato de transacción entre las partes, el cual es una de las fuentes de las obligaciones a tenor con el Artículo 1042 del Código Civil, *supra,* sec. 2992, más se perfeccionó desde que ambas partes prestaron su consentimiento mediante el concurso de la oferta por parte de MAPFRE y la

aceptación de la cosa y la causa por la parte apelante. Las obligaciones que emanaron del referido contrato tuvieron el efecto de ley entre las partes. *Véase* Art. 1044 del Código Civil, *supra,* sec. 2994. Además, nos resulta importante puntualizar que la parte apelante no presentó un ápice de evidencia para demostrar la existencia de dolo o cualquier otra acción que viciara su consentimiento, o que se empleara alguna de las prácticas desleales dispuestas en el Artículo 27.161 del Código de Seguros, *supra,* sec. 2716a. A su vez, no nos evidenció que firmó por un relevo en el que se exoneró a MAPFRE por obligaciones contractuales que no fueron objeto de la transacción. Por otro lado, el trasfondo fáctico de las gestiones realizadas por la parte apelada, evidenciado por los documentos que obran en el expediente de este caso, demuestran cumplimiento con las exigencias del Código de Seguros, *supra,* así como con la jurisprudencia interpretativa.

En mérito de lo anterior, confirmamos la *Sentencia* apelada.

## IV.

Por los fundamentos antes expuestos, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

El juez Sánchez Ramos disiente con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| EDGARDO QUIÑONES RIVERA y OTROS<br><br>Apelantes<br><br>v.<br><br>MAPFRE PRAICO INSURANCE COMPANY<br><br>Apelado | KLAN202400536 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Civil Núm.: HU2023CV1316<br><br>Sobre: Daños Incumplimiento de Contrato |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

## OPINIÓN DISIDENTE DEL JUEZ SÁNCHEZ RAMOS

El récord no le permitía al Tribunal de Primera Instancia ("TPI") adjudicar la validez de la transacción entre las partes, por lo cual procedía revocar la sentencia apelada. En esta etapa, está en controversia si fue justa y razonable la oferta de la aseguradora, aceptada por la parte demandante luego de solicitar reconsideración. Distinto a una transacción ordinaria en el ámbito comercial, en el contexto altamente reglamentado de la relación entre una aseguradora y su asegurado, para que una transacción sea válida, **es necesario que la cuantía acordada sea justa y razonable**. En la etapa actual de este caso, no es posible adjudicar esta controversia.



"[D]ebido a que la industria de los seguros está revestida del más alto interés público, es reg[lament]ada extensamente por el Estado". *Carpets & Rugs v. Tropical Reps*, 175 DPR 614, 632 (2009) (citas omitidas); véase, por ejemplo, 26 LPRA secs. 1-10377. El "negocio de seguros está investido de un alto interés público debido al papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de los ciudadanos". *RJ Reynolds v. Vega Otero*, 197 DPR 699, 706 (2017); *Natal Cruz v. Santiago Negrón*, 188 DPR

564, 575 (2013). Este alto interés surge "de la extraordinaria importancia que juegan los seguros en la estabilidad de nuestra sociedad". *RJ Reynolds, supra; SLG Francis-Acevedo v. SIMED,* 176 DPR 372 (2009).

El Código de Seguros reglamenta expresamente las "prácticas comerciales en el negocio de seguros". 27 LPRA sec. 2701-2736; *Carpets & Rugs, supra; Assoc. Ins. Agencies, Inc. v. Com. Seg. PR,* 144 DPR 425, 442 (1997). "Uno de los renglones mayormente reg[lament]ado por el Código de Seguros de Puerto Rico" es el relacionado con "las prácticas desleales y fraudes en el negocio de los seguros", lo cual incluye lo relativo al "ajuste de reclamaciones". *Carpets & Rugs,* 175 DPR a la pág. 632; *Comisionado de Seguros v. PRIA,* 168 DPR 659 (2006); Artículos 27.010-27.270 del Código de Seguros de Puerto Rico, 26 LPRA secs. 2701-2740. En efecto, en conexión con el manejo de reclamaciones, el Código de Seguros prohíbe un número de "actos o prácticas desleales". 26 LPRA sec. 2716a.

Por ejemplo, una aseguradora no podrá "hacer falsas representaciones de los hechos o de los términos de una póliza, relacionados con una cubierta en controversia." 26 LPRA sec. 2716a(1). Además, la aseguradora debe "actuar con razonable diligencia" una vez se le notifica una reclamación y conducir una "rápida investigación" de la misma, la cual tiene que ser "razonable". 26 LPRA sec. 2716a(2)-(5). La aseguradora debe "intentar de buena fe" realizar un "ajuste rápido, **justo y equitativo** de una reclamación de la cual surja claramente la responsabilidad". 26 LPRA sec. 2716a(6) (énfasis suplido).

Más importante aún en este contexto, una aseguradora no puede "ofrec[er]... una cantidad sustancialmente menor" a la que el asegurado tiene derecho. 26 LPRA sec. 2716a(7). **Tampoco puede una aseguradora "tratar de transigir una reclamación por una**



**cantidad menor que la que el asegurado o reclamante razonablemente tenga derecho"**. 26 LPRA sec. 2716a(8).

Por su parte, mediante reglamentación de la Oficina del Comisionado de Seguros (el "Comisionado"), se reitera la obligación de una aseguradora de "ofrecer al reclamante aquellas cantidades que dentro de los límites de la póliza sean justas y razonables". Artículo 7 de Regla XLVII, sobre Prácticas Desleales en el Ajuste de Reclamaciones (la "Regla del Comisionado", Reglamento Núm. 2080 de 6 de abril de 1976, enmendando la Regla XLVII al Reglamento del Código de Seguros) (énfasis suplido).

En fin, una aseguradora está obligada por ley a "notificar una oferta **razonable"** (énfasis suplido). *Carpets & Rugs*, 175 DPR a la pág. 634. La investigación que precede la oferta tiene que ser "diligente", y el ajuste tiene que ser **"equitativo y razonable"**. *Carpets & Rugs*, 175 DPR a la pág. 634 (énfasis suplido). En otras palabras, las aseguradoras tienen la "obligación de llevar a cabo un ajuste rápido, **justo, equitativo y de buena fe"**. *Carpets & Rugs*, 175 DPR a la pág. 635 (énfasis suplido).

Así pues, como cuestión de derecho, **en el contexto de una relación asegurado-aseguradora,** para que una transacción sea válida, se requiere que la aseguradora haya cumplido con los requisitos que se han establecido por ley y reglamentación en torno al ajuste de una reclamación, entiéndase, por ejemplo, que la oferta haya sido justa, equitativa y razonable en las circunstancias particulares del caso. Véase, por ejemplo, 26 LPRA sec. 2716a(6),(7) y (8); Artículo 7 de la Regla del Comisionado; *Carpets & Rugs,* 175 DPR a las págs. 634-635; *Rosario v. Nationwide Mutual,* 158 DPR 775, 781-782 (2003).

**Una aseguradora está impedida de ofrecer una cantidad "sustancialmente menor" a la que el asegurado tiene derecho, así como de transigir una reclamación por una "cantidad**



**menor" a la que el asegurado "razonablemente tenga derecho".**
26 LPRA sec. 2716a(7) y (8). Ante este tipo de conducta ilegal o "fraudulenta" de una aseguradora, o ante dolo de su parte, no es válida una "transacción" con la parte asegurada.

En este caso, la aseguradora no estableció, como hecho incontrovertido, nada de lo anterior. En esencia, lo único pertinente que estableció la aseguradora es que emitió unos pagos y que, como resultado del último de ellos, la parte asegurada firmó un relevo. Sin embargo, no se demostró que el total de los pagos resultase justo, razonable o equitativo, a la luz de los daños sufridos por la parte demandante, cubiertos por la Póliza. **Sobre ello hay controversia, pues el ajuste de la aseguradora fue de menos de diez mil dólares, mientras la parte demandante sometió ante el TPI un estimado de daños de más de cien mil dólares.**

Nuestra conclusión de que procede la revocación de la sentencia apelada se fortalece al considerar que un acto contrario a la ley es nulo y, por tanto, no puede generar derechos a favor de quien lo comete. Si, como alega la parte demandante, no fue razonable la oferta de la aseguradora (asunto sobre el cual el récord no permite conclusión en esta etapa), dicha oferta habría constituido un acto ilícito, contrario a las disposiciones estatutarias y reglamentarias, y jurisprudencia, arriba citadas, las cuales, en general, prohíben que una aseguradora realice un ajuste menor a lo razonable. 26 LPRA secs. 2716a(7)y(8); Artículo 7 de la Regla del Comisionado; *Carpets & Rugs,* 175 DPR a las págs. 634-635.



En ausencia de apoyo alguno en el récord para concluir que la oferta de la aseguradora cumplió con la citada normativa, el TPI estaba impedido de concluir que existiese una transacción jurídicamente válida y, por tanto, no podía desestimar la demanda de referencia. Recuérdese que son "nulos los actos ejecutados

contra lo dispuesto en la ley". Artículo 4 del Código Civil, 31 LPRA sec. 4 (vigente al momento de los hechos).

Aunque el derecho que por ley tiene un asegurado a recibir una oferta razonable es renunciable, dicha renuncia "debe ser clara, terminante e inequívoca." *Chico v. Editorial Ponce*, 101 DPR 759, 778 (1973); *Quiñones Quiñones v. Quiñones Irizarry*, 91 DPR 225, 265-266 (1964). La "renuncia de un derecho afirmativamente concedido por ley requiere que la parte renunciante conozca de forma cabal su derecho y haya tenido la intención clara de abandonarlo". *Feliciano Aguayo v. Mapfre,* 207 DPR 138 (2021); *Fenning v. Tribunal,* 96 DPR 615, 622 (1968); *Mendoza Aldarondo v. Asociación Empleados,* 94 DPR 564, 577 (1967) ("[p]ara que se entienda que una persona renuncia a sus derechos debe tener cabal y actual conocimiento de los mismos y su intención de renunciarlos debe ser clara"). En este caso, el récord tampoco le permitía al TPI concluir que medió una renuncia válida de la parte asegurada al derecho que tenía de recibir una oferta justa y razonable.

Por los fundamentos anteriormente expuestos, procedía la revocación de la sentencia apelada.

En San Juan, Puerto Rico, a 17 de julio de 2024.

HON. ROBERTO SÁNCHEZ RAMOS
JUEZ DE APELACIONES